CITY OF MAUMEE, APPELLANT, *v.* GABRIEL, APPELLEE.

[Cite as Maumee *v.* Gabriel (1988), 35 Ohio St. 3d 60.]

(No. 87-406—Decided January 27, 1988.)

*Sheilah H. McAdams* and *Kathryn A. Reckley,* for appellant.

*Gary E. Gabriel, pro se.*

WRIGHT, J. The principal issue presented in this action is whether an administrative suspension of a person's driver's license without a prior hearing violates due process. We find it does not.

The Compact is a uniform Act adopted by at least thirty-seven states.[3] The purpose of the Compact is to remove dangerous and uncooperative drivers from the road and to allow a nonresident motorist to accept a traffic citation for minor infractions and proceed without the entanglements of posting bond or being taken directly to court for trial.[4]

A careful reading of the Compact reveals it does not state what kind of suspension hearing is to be provided for individuals who do not resolve out-of-state citations. The Compact provides in pertinent part:

"Article IV, Procedures for Home Jurisdiction

"(A)   Upon receipt of a report of a failure to comply from the licensing authority of the issuing jurisdiction, the licensing authority of the home jurisdiction shall notify the motorist and initiate a suspension action, in accordance with the home jurisdiction's procedures, to suspend the motorist's driver's license until satisfactory evidence of compliance with the terms of the traffic citation has been furnished to the home jurisdiction licensing authority. Due process safeguards will be accorded."

Because the Compact specifically provides that suspension procedures must be followed pursuant to the home jurisdiction's procedures, the constitutionality of the Compact itself is technically not in question. Rather, Gabriel's due process complaint challenges the validity of the procedures that implement the suspension hearing. We now turn our attention to those procedures.

The BMV adopted procedures to implement the Compact in Ohio Department of Highway Safety Bureau of Motor Vehicles[,] Nonresident Violator Compact Procedures (hereinafter "BMV procedures"), effective January 1, 1985. Part V of the BMV procedures provides: "In keeping with the due process safeguards within the Com-

---

[3] As of February 1986, the following jurisdictions had enacted the Compact:

Alabama, Arkansas, Colorado, Connecticut, Delaware, Florida, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Mississippi, Missouri, Nebraska, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Virginia, Washington, D.C., West Virginia.

[4] The jurisdiction issuing the citation and the motorist's home state must both be members of the Compact for its provisions to be effective. Thus, a police officer issuing a citation to a nonresident motorist cannot require collateral or security from the motorist so long as he receives the motorist's signed personal recognizance that he or she will comply with the citation and both the issuing jurisdiction and the motorist's home jurisdiction are members of the Compact. Any failure of the motorist to comply is reported to the motorist's home jurisdiction. The home jurisdiction then notifies the motorist and is to initiate an action to suspend the motorist's license until compliance with the issued citation occurs. The Compact does not apply to all traffic regulations. See, generally, 7 Ohio Jurisprudence 3d (1987 Supp.), Automobiles and Other Vehicles, Section 170.5.

pact, a motorist * * * has the option of requesting a *show cause hearing* with the Ohio Bureau of Motor Vehicles."[5] (Emphasis *sic.*)

The BMV procedures thus provide for a postsuspension hearing. Gabriel contends he is guaranteed a presuspension hearing by due process. Our interpretation of the applicable case precedent leads us to conclude the BMV's stated procedures satisfy due process.

In *Mathews* v. *Eldridge* (1976), 424 U.S. 319, the United States Supreme Court set forth the criteria used to determine whether administrative procedures conform with due process. According to the court:

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334-335.

The *Mathews* case specifically involved the termination of Social Security disability benefits by administrative procedures. The balancing test is, nevertheless, applicable to other administrative adjudications. Therefore, we must balance the factors set forth in *Mathews* to decide whether Gabriel has been denied his due process rights.

The private interest affected is, of course, a license to operate a motor vehicle. The Supreme Court previously has held a driver's license is not so great a privilege as to require a departure " 'from the ordinary principle

---

[5] Article V provides in full:

"*HEARINGS FOR OHIO RESIDENTS WHO HAVE RECEIVED TRAFFIC CITATIONS FROM MEMBER JURISDICTIONS* UNDER THE *NONRESIDENT VIOLATOR COMPACT*.

"I In keeping with the due process safeguards within the Compact, a motorist identified as a nonresident violator has the option of requesting a *show cause hearing* with the Ohio Bureau of Motor Vehicles.

"A) The hearing does not concern itself with the citation terms, but *is granted to ascertain whether or not the motorist whose license is suspended is the individual to whom the citation was issued.*

"B) The motorist is therefore protected from being victimized by procedural or clerical error or other circumstance that could cause a mistaken identity.

"C) The motorist is given the opportunity to present evidence that the license suspension should not have taken place because of a procedural error, or that the licensee is not the identified violator.

"II When the Bureau of Motor Vehicles is notified by certified mail that the motorist is requesting a hearing within ten days from the date of mailing by certified mail to the motorist, notifying him/her that he/she will be suspended, the Bureau will begin the process of setting up a hearing for said motorist.

"A) Within thirty days from the date of receipt of the motorist's certified letter requesting a hearing, the Bureau of Motor Vehicles will schedule and hold a hearing and the Registrar shall render a decision.

"B) The hearings will be scheduled in convenient locations throughout the state of Ohio.

"C) If the motorist can prove that he/she was not the person to whom the citation was issued, suspension procedures are then cancelled and the driver license is fully reinstated. The results will then be reported to the Issuing Jurisdiction.

"III When a motorist can prove he/she is not the person to whom the citation was issued, he/she will not have to pay the *$12.50 reinstatement fee that applies to all Ohio residents who are suspended under the Nonresident Violator Compact.*" (Emphasis *sic.*)

* * * that something less than an evidentiary hearing is sufficient prior to adverse administrative action.' " *Dixon* v. *Love* (1977), 431 U.S. 105, 113, citing to *Mathews, supra,* at 343. We agree with this reasoning and find that the right to possess a driver's license is not a substantial private interest.[6]

According to the second *Mathews* factor, the risk of an erroneous deprivation of an operator's license absent a presuspension hearing must be determined. According to the appellant, the issuing jurisdiction obtains the identity of the violator directly from the motorist. If the citation is not resolved, the issuing jurisdiction forwards the information directly to the home jurisdiction. The home jurisdiction subsequently contacts the violator and informs him that his license has been suspended.

In any bureaucratic undertaking, there remains a possibility of clerical error. However, we do not believe the risk of error is high enough to outweigh the interests of the state, discussed below. Furthermore, the appellee fails to show any additional or substitute procedures that would reduce this risk.

The stated governmental interests to be considered pursuant to the third *Mathews* factor are to insure compliance with the terms of an issued citation and to remove from the road those drivers who fail to obey the procedural laws or regulations of the respective jurisdictions. R.C. 4511.95 (Article I). We consider the stated interests to be substantial.

A balancing of the aforementioned factors clearly indicates a postsuspension hearing is constitutional. The interest of the state in protecting the public by removing dangerous and uncooperative drivers from the roads is extremely high, whereas the risk of erroneous deprivation of an operator's license is minimal. Furthermore, if the state were to afford all violators the presuspension hearing demanded, the Bureau of Motor Vehicles would be excessively burdened. As the United States Supreme Court held in *Dixon* v. *Love, supra,* at 114: "* * * Giving licensees the choice thus automatically to obtain a delay in the effectiveness of a suspension or revocation would encourage drivers routinely to request full administrative hearings." Therefore, we hold the Ohio Bureau of Motor Vehicles' procedures implementing the Nonresident Violator Compact of 1977, R.C. 4511.95, satisfy due process requirements by providing a postlicense suspension hearing.

The second issue before us is whether Gabriel was denied due process of law by the BMV when he requested and allegedly did not receive a postsuspension hearing. A postsuspension hearing, if requested pursuant to the Ohio Bureau of Motor Vehicles' procedures, is mandatory.

The BMV sent notice to Gabriel that his license was suspended on February 4, 1986. The notice was postmarked February 12, 1986 and stated:

"You have the opportunity for a hearing. YOU MAY SUBMIT A REQUEST IN WRITING TO THE OHIO BUREAU OF MOTOR VEHICLES, in person or by REGISTERED or CERTIFIED mail, return receipt requested, within TEN (10) days after the mailing date of this official notice.* * *

"Your request for a hearing DOES

---

[6] Indeed, Ohio case precedent has previously recognized that a driver's license is a privilege and not a property right. *State* v. *Newkirk* (1968), 21 Ohio App. 2d 160,165, 50 O.O. 2d 253, 256, 255 N.E. 2d 851, 854.

NOT delay/cancel your driver license suspension.* * *'' (Emphasis *sic.*)

Gabriel asserts he requested a hearing in a letter sent by certified mail postmarked February 24, 1986. The record does not reveal whether such hearing was conducted. Failure to grant a postsuspension hearing on request within a reasonable time frame makes a conviction for driving while under said suspension voidable. However, this issue can only be resolved by way of remand to the trial court.

Accordingly, the judgment of the court of appeals is reversed in part and this cause is remanded for further proceedings in accordance with this opinion.

*Judgment reversed in part and cause remanded.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.