[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 455.]

THE STATE OF OHIO, APPELLEE, *v*. HOCHHAUSLER ET AL., APPELLANTS.

[Cite as *State v. Hochhausler*, 1996-Ohio-374.]

*Motor vehicles—Traffic laws—Driving while intoxicated—Administrative license suspension provisions of R.C. 4511.191 do not violate right to procedural due process—"No stay" provision of R.C. 4511.191(H)(1) is unconstitutional and severable from rest of statute—R.C. 4511.195 unconstitutional as applied to owner of vehicle seized and immobilized because the vehicle was being operated by a third person when that person was arrested on a drunk-driving charge.*

1. The administrative license suspension provisions of R.C. 4511.191 do not violate the right to procedural due process.

2. The "no stay" provision of R.C. 4511.191(H)(1) is unconstitutional as a violation of the doctrine of separation of powers and is severable from the rest of the statute.

3. R.C. 4511.195 is unconstitutional as applied to the owner of a vehicle that has been seized and immobilized because the vehicle was being operated by a third person when that person was arrested on a drunk-driving charge.

(No. 95-1365—Submitted February 7, 1996—Decided July 30,1996.)

APPEAL from the Court of Appeals for Warren County, Nos. CA93-12-104 and CA93-12-105.

_____

{¶ 1} On December 3, 1993, appellant Thomas J. Hochhausler was arrested and charged with his second offense within five years of driving while intoxicated in violation of R.C. 4511.19(A). Hochhausler's consent to a breath-alcohol test resulted in a reading of .105 grams of alcohol by weight per two hundred ten liters of breath. Pursuant to R.C. 4511.191(F)(2), the police immediately placed

Hochhausler under an administrative license suspension ("ALS") for a period of one year.

{¶ 2} At the time of the arrest, Hochhausler was driving a Ford pick-up truck owned by appellant Omni Fireproofing, Inc. ("Omni"). Omni is a closely held corporation in which Hochhausler is the president and majority shareholder. The vehicle was seized and the license plates were impounded pursuant to R.C. 4511.195.

{¶ 3} On December 9, at his initial appearance before the trial court, Hochhausler entered a plea of not guilty and made the following motions: (1) to dismiss the ALS on the ground that the suspension violated the Ohio and United States Constitutions; (2) to appeal the ALS pursuant to R.C. 4511.191(H)(1); and (3) to stay the ALS pending appeal. An employee of Omni also appeared at the hearing and moved the trial court to release the seized vehicle pursuant to R.C. 4511.195(C)(2)(a). Subsequently, on December 14, the trial court denied all four motions.

{¶ 4} On December 16, Hochhausler appealed the denial of his motions to the Twelfth District Court of Appeals, arguing that R.C. 4511.191(H)(1) unconstitutionally infringes upon both the doctrine of separation of powers by denying jurisdiction to any court to stay an ALS suspension, and the right to procedural due process by failing to provide a prompt and meaningful postdeprivation hearing. Likewise, on December 20, Omni appealed the denial of its motion to regain possession of its motor vehicle, arguing that R.C. 4511.195 violates the right to procedural due process.

{¶ 5} The court of appeals affirmed the judgment of the trial court, holding that R.C. 4511.191(H)(1) and 4511.195 do not violate the Due Process Clauses of the Ohio and United States Constitutions. Further, the court of appeals interpreted the "no stay" provision of R.C. 4511.191(H)(1) as "merely prohibiting a municipal court, county court, mayor's court or other court of original jurisdiction from

staying a license suspension imposed under R.C. 4511.191(E) or (F) pending an ALS appeal." In order to preserve the constitutionality of the statute, the court of appeals interpreted the "no stay" provision as not precluding a court of appeals or the Ohio Supreme Court from staying an administrative license suspension pending appeal. Finally, the court of appeals reversed the dismissal of Hochhausler's ALS appeal and remanded the cause for a hearing on the ALS pursuant to R.C. 4511.191(H). Both Hochhausler and Omni appealed the adverse judgments to this court.

{¶ 6} This cause is now before this court upon the allowance of a discretionary appeal.

_____

*Timothy A. Oliver*, Warren County Prosecuting Attorney, *Carolyn A. Duvelius*, Assistant Prosecuting Attorney; *Betty D. Montgomery*, Attorney General, *Jeffery S. Sutton*, State Solicitor, *Susan E. Ashbrook* and *Andrew S. Bergman*, Assistant Attorneys General, for appellee.

*Rittgers & Mengle*, *W. Andrew Hasselbach* and *Charles H. Rittgers,* for appellants.

*Baker & Hostetler*, *Richard W. Siehl* and *Anthony J. Franze*, urging affirmance for *amicus curiae*, Mothers Against Drunk Driving.

*Baker & Hostetler, William W. Falsgraf* and *Shilpa Shah*, urging affirmance for *amicus curiae,* American Alliance for Rights and Responsibilities.

*James M. Looker*, urging reversal for *amicus curiae*, Ohio Association of Criminal Defense Lawyers.

*Gump & Slyman Co., L.P.A.*, *Jeffrey D. Slyman* and *Dennis E. Gump*, urging reversal for *amicus curiae*, Ohio Academy of Trial Lawyers.

_____

**MOYER, C.J.**

**{¶ 7}** In this case, we are asked to determine several issues relating to the constitutionality of R.C. 4511.191 and 4511.195.

**{¶ 8}** It is a well-settled rule that an Act of the General Assembly is entitled to a strong presumption of constitutionality. *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 616 N.E.2d 163. Moreover, challenged legislation will not be invalidated unless the challenger establishes the unconstitutional nature of the statute beyond a reasonable doubt. *Hilton v. Toledo* (1980), 62 Ohio St.2d 394, 396, 16 O.O. 3d 430, 431, 405 N.E.2d 1047, 1049. We apply these principles to both appeals.

I

*R.C. 4511.191—Procedural Due Process*

**{¶ 9}** Hochhausler argues that the administrative suspension of his driver's license pursuant to R.C. 4511.191(F) is unconstitutional because the statute permits the suspension to occur without due process of law.

**{¶ 10}** R.C. 4511.191(F) provides:

"Upon receipt of the sworn report of an arresting officer completed and sent to the registrar and a court pursuant to divisions (D)(1)(c) and (D)(2) of this section in regard to a person whose test results indicate that his blood contained a concentration of ten-hundredths of one per cent or more by weight of alcohol, his breath contained a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath, or his urine contained a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine at the time of the alleged offense, the registrar shall enter into his records the fact that the person's driver's or commercial driver's license or permit or nonresident operating privilege was suspended by the arresting officer under division (D)(1)(a) of this section and the period of the suspension, as determined under divisions (F)(1) to (4) of this section. The suspension shall be

4

subject to appeal as provided in this section and shall be for whichever of the following periods that applies:

"(1) If the person has not been convicted, within five years of the date the test was conducted of a violation of section 4511.19 of the Revised Code, * * * the period of the suspension or denial shall be ninety days.

"(2) If the person has been convicted, within five years of the date the test was conducted, of one violation of a statute or ordinance described in division (F)(1) of this section, the period of the suspension or denial shall be one year.

"(3) If the person has been convicted, within five years of the date the test was conducted, of two violations of a statute or ordinance described in division (F)(1) of this section, the period of the suspension or denial shall be two years.

"(4) If the person has been convicted, within five years of the date the test was conducted, of more than two violations of a statute or ordinance described in division (F)(1) of this section, the period of the suspension or denial shall be three years."

{¶ 11} R.C. 4511.191(H)(1) permits a person to appeal the administrative license suspension at the initial appearance on the underlying DUI charge, which must be held within five days of arrest. Division (H)(1) further provides that the only issues that may be raised in an ALS appeal are:

"(a) Whether the law enforcement officer had reasonable ground to believe the arrested person was operating a vehicle * * * while under the influence * * * or with a prohibited concentration of alcohol in the blood, breath, or urine and whether the arrested person was in fact placed under arrest;

"(b) Whether the law enforcement officer requested the arrested person to submit to the chemical test * * *;

"(c) Whether the arresting officer informed the arrested person of the consequences of refusing to be tested or of submitting to the test;

"(d) Whichever of the following is applicable:

"(i)   Whether the arrested person refused to submit to the chemical test requested by the officer;

"(ii)   Whether the chemical test results indicate that [the arrestee's blood, breath, or urine contain alcohol in excess of the statutory limits.]"   R.C. 4511.191(H)(1)(a) through (d).

{¶ 12} Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest.  *Greene v. Lindsey* (1982), 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249; *Boddie v. Connecticut* (1971), 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113; *Williams v. Dollison* (1980), 62 Ohio St.2d 297, 299, 16 O.O. 3d 350, 351, 405 N.E.2d 714, 716.  However, the concept of due process is flexible and varies depending on the importance attached to the interest and the particular circumstances under which the deprivation may occur.  *Walters v. Natl. Assn. of Radiation Survivors* (1985), 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220, 232.

{¶ 13} It is well settled that the Due Process Clause applies to the suspension or revocation of a driver's license.  *Dixon v. Love* (1977), 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172, 179-180; *Bell v. Burson* (1971), 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94; *Maumee v. Gabriel* (1988), 35 Ohio St.3d 60, 518 N.E.2d 558.  Accordingly, we proceed to determine whether the procedural safeguards provided by R.C. 4511.191 are sufficient to comply with the requirements of due process.

{¶ 14} In *Mackey v. Montrym* (1979), 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321, the United States Supreme Court addressed the issue of what process is due to protect an individual against an erroneous deprivation of the property interest in a driver's license.  The *Mackey* court used the three-pronged balancing test set forth in *Mathews v. Eldridge* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. Although

we have previously applied the *Mathews* test in determining that an administrative suspension of a driver's license does not violate due process when a postsuspension hearing is provided, *Gabriel*, 35 Ohio St.3d at 62-63, 518 N.E.2d at 561-562, the statute at issue here requires an independent application of the *Mathews* test. The test requires the consideration of the following factors:

"First, *the private interest* that will be affected by the official action; second, *the risk of an erroneous deprivation* of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, *the Government's interest*, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (Emphasis added.) *Mathews* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

*The* Mathews *Test Applied*

Private Interest

{¶ 15} Applying the first prong of the *Mathews* test to Hochhausler's argument, it is easily determined that the private interest at issue is Hochhausler's stake in the continued possession and use of his driver's license pending the outcome of the ALS appeal. This interest is substantial, in part because the state "will not be able to make a driver whole for any personal inconvenience or economic hardship suffered by reason of any delay in redressing an erroneous suspension through postsuspension review procedures." *Mackey*, at 11, 99 S.Ct. at 2617, 61 L.Ed.2d at 330. The determinative factors we must consider in determining the actual weight to be given to this interest include (1) the duration of the license suspension, (2) the availability of prompt postsuspension review, and (3) the availability of hardship relief. *Id.* at 11-12, 99 S.Ct. at 2617-2618, 61 L.Ed.2d at 330-331.

{¶ 16} The duration of the license suspension for a person who takes and fails a chemical test is dictated by R.C. 4511.191(F). Division (F)(1) provides that

the period of suspension shall be ninety days where the defendant has not been convicted of a drunk-driving offense within the previous five-year period. The length of the suspension increases to one, two, or three years where the defendant has previously been convicted of one, two, or three or more drunk-driving offenses, respectively, during the preceding five-year period. R.C. 4511.191(F)(1) through (4). The record demonstrates that Hochhausler's license was suspended for one year due to one prior conviction of a drunk-driving offense within the past five years. Hochhausler contends that the burden imposed by this period of suspension is so severe that due process requires that a pre-suspension hearing be given. We disagree.

{¶ 17} This court and the United States Supreme Court, when reviewing statutes substantially similar to R.C. 4511.191(F), have consistently held that the burden imposed on an individual by a summary administrative license suspension is not so great that the specific dictates of due process required prior notice and an opportunity to be heard. See, *e.g.*, *Dixon*, 431 U.S. 105; 95 S.Ct. 1723, 52 L.Ed.2d 172; *Gabriel,* 35 Ohio St.3d 60; 518 N.E.2d 558; see, also, *State v. Starnes* (1970), 21 Ohio St.2d 38, 50 O.O.2d 84, 254 N.E.2d 675. We adopt the rationale of the decisions in those cases and conclude that the suspensions that may be imposed pursuant to R.C. 4511.191(F) are not so burdensome that a presuspension hearing is required.

{¶ 18} We next consider the availability of prompt postsuspension review and its effect on the private interest. R.C. 4511.191(H)(1) permits a defendant to appeal an administrative license suspension at the initial appearance for the criminal charge, which must be held within five days of arrest. Division (H)(1) also provides that the defendant may raise issues pertaining to four specified conditions, which include questions regarding the reasonableness of the initial stop by the arresting officer. See R.C. 4511.191(H)(1)(a) through (d). Moreover, the statute requires the trial court to terminate the suspension where any of the specified conditions are

not met. R.C. 4511.191(H)(2). These appeal provisions provide an aggrieved licensee with an adequate means of obtaining prompt post-suspension review of an administrative license suspension. Accordingly, we conclude that the burden on the private interest implicated by an ALS is significantly reduced by the availability of the review procedures of R.C. 4511.191(H), and any wrongful deprivation of the driver's license prior to the time of the hearing is minimal.

{¶ 19} Finally, the availability of hardship relief, while not extensive, is sufficient to satisfy the private-interest element. Under R.C. 4511.191(I), occupational driving privileges are made available to a driver whose license has been administratively suspended. Although the statute does not provide for immediate hardship relief, we conclude that the statutory scheme is not so onerous as to significantly elevate the private interest implicated by an ALS. *Mackey*, 443 U.S. at 12, 99 S.Ct. at 2618, 61 L.Ed.2d at 330 (Hardship relief is "in no sense the 'controlling' factor.").

Risk of Erroneous Deprivation

{¶ 20} The second prong of the *Mathews* test requires us to consider the risk of an erroneous deprivation of a driver's license as a result of the procedures used. While this prong also requires consideration of the reliability of the procedures, the Due Process Clause has never been construed to mandate that the procedures used be so comprehensive as to preclude any possibility of error. Thus, "'something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Dixon,* at 113, 97 S.Ct. at 1728, 52 L.Ed.2d at 180. Further, when prompt postdeprivation review is available to correct administrative error, no more is generally required "than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible government official warrants them to be." *Mackey,* at 13, 99 S.Ct. at 2618, 61 L.Ed.2d at 331.

{¶ 21} The procedures followed by an arresting officer pursuant to R.C. 4511.191 simply do not present so substantial a risk of erroneous deprivation as to require a full presuspension hearing. The underlying circumstances for the administrative license suspension -- an arrest, reasonable grounds for the arrest, and either a refusal to take the chemical test, or taking the chemical test and failing -- may be accepted as objective facts. These facts are recorded in a sworn report completed by the arresting officer pursuant to R.C. 4511.191(D)(1)(c). This report is prima facie proof of the information and statements included in the report by the arresting officer. R.C. 4511.191(D)(3). Moreover, the use of chemical testing procedures in drunk-driving cases is widely accepted by courts. *State v. Vega* (1984), 12 Ohio St.3d 185, 186, 12 OBR 251, 252-258, 465 N.E.2d 1303, 1305. The tests have been generally recognized for over twenty-seven years as being reasonably reliable when conducted with proper equipment and by competent operators. *Id.,* citing *Westerville v. Cunningham* (1968), 15 Ohio St.2d 121, 44 O.O.2d 119, 239 N.E.2d 40. While the risk of an erroneous deprivation may increase when the result of a chemical test, rather than a refusal to submit to the test, serves as the basis of the suspension, the risk would not rise to a level requiring a result different from that reached in *Mackey*. Therefore, we conclude that the risk of an erroneous suspension of a driver's license pursuant to R.C. 4511.191 is not so substantial as to require that the accused receive prior notice and an opportunity to be heard prior to the suspension.

Governmental Interest

{¶ 22} The final prong of the *Mathews* test requires consideration of the governmental interest served by the provisions of R.C. 4511.191(F). The state interest served by the reasonable use of an administrative license suspension is obvious and compelling. In view of the death and injury caused by persons driving on public roads and highways while intoxicated, the General Assembly, by a perpetual process of amending Ohio's "drunk driving" laws, and the courts, by their

sentencing practices, have unequivocally stated the state's interest in removing intoxicated drivers from public roadways.

{¶ 23} For all of the foregoing reasons, we hold that the administrative license suspension provisions of R.C. 4511.191 do not violate an individual's right to procedural due process.

II

*Separation of Powers*

{¶ 24} Hochhausler contends that the "no stay" provision of R.C. 4511.191(H)(1) violates the doctrine of separation of powers. R.C. 4511.191(H)(1) provides in part:

"If the person appeals the suspension [of his driver's license] at his initial appearance, the appeal does not stay the operation of the suspension. Subject to division (H)(2) of this section, no court has jurisdiction to grant a stay of a suspension imposed under division (E) or (F) of this section, and *any order issued by any court that purports to grant a stay of any suspension imposed under either of those divisions shall not be given administrative effect*." (Emphasis added.)

{¶ 25} The principle of separation of powers is embedded in the constitutional framework of our state government. The Ohio Constitution applies the principle in defining the nature and scope of powers designated to the three branches of the government. *State v. Warner* (1990), 55 Ohio St.3d 31, 43-44, 564 N.E.2d 18, 31. See *State v. Harmon* (1877), 31 Ohio St. 250, 258. It is inherent in our theory of government "'that each of the three grand divisions of the government, must be protected from the encroachments of the others, so far that its integrity and independence may be preserved. * * *'" *S. Euclid v. Jemison* (1986), 28 Ohio St.3d 157, 159, 28 OBR 250, 252, 503 N.E.2d 136, 138, quoting *Fairview v. Giffee* (1905), 73 Ohio St. 183, 187 76 N.E. 865, 866.

{¶ 26} In order to preserve the constitutionality of R.C. 4511.191(H)(1), the court of appeals interpreted the "no stay" provisions "as merely prohibiting a

municipal court, county court, mayor's court or other court of original jurisdiction from staying a license suspension imposed under R.C. 4511.191(E) or (F) pending an ALS appeal." The court of appeals also said, "We do not believe that the 'no stay' provisions of R.C. 4511.191(H)(1) were intended to preclude a court of appeals or the Ohio Supreme Court from staying an ALS appeal." Although we agree that a court should not declare a statute to be unconstitutional if a constitutional construction is available, *State ex rel. Steffen v. Kraft* (1993) 67 Ohio St.3d 439, 440, 619 N.E.2d 688, 689, the holding of the court of appeals strains that principle beyond its purpose.

**{¶ 27}** We have held that "[t]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers." *State ex rel. Johnston v. Taulbee* (1981), 66 Ohio St.2d 417, 20 O.O.3d 361, 423 N.E.2d 80, paragraph one of the syllabus. We have also held that "[c]ourts of general jurisdiction, whether named in the Constitution or established pursuant to the provisions thereof, possess all powers necessary to secure and safeguard the free and untrammeled exercise of their judicial functions and cannot be directed, controlled or impeded therein by other branches of the government." (Citations omitted.) *Id.* at paragraph two of the syllabus.

**{¶ 28}** The legislative branch has no right to limit the inherent powers of the judicial branch of the government. *Hale v. State* (1896), 55 Ohio St. 210, 212-213, 45 N.E. 199, 200. Inherent within a court's jurisdiction, and essential to the orderly and efficient administration of justice, is the power to grant or deny stays. See *Landis v. N. Am. Co.* (1936), 299 U.S. 248, 254, 57 S.Ct. 163, 166, 81 L.Ed. 153, 158; *State v. Smith* (1989), 42 Ohio St.3d 60, 61, 537 N.E.2d 198, 200. To the extent that R.C. 4511.191(H) deprives courts of their ability to grant a stay of an administrative license suspension, it improperly interferes with the exercise of a court's judicial functions. Thus, the part of R.C. 4511.191(H)(1) that prevents "any

court" from granting a stay violates the doctrine of separation of powers and is unconstitutional.

**{¶ 29}** Having found part of R.C. 4511.191 unconstitutional, we next determine whether the offending "no stay" provision may be severed from the remainder of the statute. R.C. 1.50 provides that statutory provisions are severable: "If any provisions of a section of the Revised Code or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable."

**{¶ 30}** Prior to severing a portion of a statute, we must first determine that the severability will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part. *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523, 644 N.E.2d 369, 377. The test for determining whether part of a statute is severable was set forth in *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33:

"'(1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?'" *Id.,* quoting *State v. Bickford* (1914), 28 N.D. 36, 147 N.W. 407, paragraph nineteen of the syllabus.

**{¶ 31}** Denying a court the power to grant a stay is not so essentially connected with the remainder of R.C. 4511.191 that, if eliminated, the statute loses its intent. Thus modified, the remainder of R.C. 4511.191(H) continues to give effect to the intention of the General Assembly. Therefore, we hold that the "no

stay" provision of R.C. 4511.191(H)(1) is unconstitutional as a violation of the doctrine of separation of powers and is severable from the rest of the statute.

## III

### *R.C. 4511.195—Procedural Due Process*

**{¶ 32}** Omni contends that the newly enacted vehicle-seizure provisions of R.C. 4511.195 are unconstitutional because no hearing is provided prior to a vehicle being seized and immobilized.[1] The relevant portion of R.C. 4511.195 provides:

"(B)(1)  If a person is arrested for a violation of section 4511.19 of the Revised Code or of a municipal OMVI ordinance and, within five years of the alleged violation, he previously has been convicted of or pleaded guilty to one or more violations of section 4511.19 of the Revised Code [or] a municipal OMVI ordinance * * *, the arresting officer or another officer of the law enforcement agency that employs the arresting officer, in addition to any action that the arresting officer is required or authorized to take by section 4511.191 of the Revised Code or by any other provision of law, shall seize the vehicle that the person was operating at the time of the alleged offense and its identification license plates. Except as otherwise provided in this division, the officer shall seize the vehicle and license plates under this division *regardless of whether the vehicle is registered in the name of the person who was operating it or in the name of another person*." (Emphasis added.)

---

1.  In *Bennis v. Michigan* (1996), 516 U.S. ___, 116 S.Ct. 994, 134 L.Ed.2d 68, 64 LW 4124, the United States Supreme Court reaffirmed a long line of cases in which the court held that an innocent owner's interest in property may be forfeited by reason of the use of the property.  We note that *Bennis* is distinguishable from the case at bar in that *Bennis* involves an equitable action on a nuisance abatement.  In contrast to Omni's appeal, the *Bennis* court stated:

"The gravamen of petitioner's due process claim is not that she was denied notice or an opportunity to contest the abatement of her car; she was accorded both.*** Rather, she claims she was entitled to contest the abatement by showing she [was an innocent owner]." *Id.* at ___, 116 S.Ct. at 998, 134 L.Ed.2d at 74-75.  Thus, it was the lack of an "innocent owner" defense in the challenged statute that was at issue in *Bennis*.  Such a defense is available in R.C. 4511.195 pursuant to 4503.235.  However, the trial court here found Omni not to be an "innocent owner," and that issue is not before this court.

**{¶ 33}** Omni argues that it is being denied its right to procedural due process because a vehicle that it owns was seized without adequate notice and a meaningful hearing to determine the status of the ownership of the vehicle. Consequently, we must again apply the *Mathews* three-pronged balancing test, which requires consideration of the private interest that will be affected by the official action, the risk of erroneous deprivation, and the governmental interest, including the burdens that would be imposed on the government by additional procedural requirements.

*The* Matthews *Test Applied*

Private Interest

**{¶ 34}** Clearly, there is a substantial interest in the possession and use of a vehicle. "Automobiles occupy a central place in the lives of most Americans, providing access to jobs, schools, and recreation as well as to the daily necessities of life." *Coleman v. Watt* (C.A.8, 1994), 40 F.3d 255, 260-261. The private interest in a vehicle, however, is different from the interest in a driver's license. A motor vehicle may be the subject of multiple private interests, *i.e*., a jointly owned family automobile or, as here, a company-owned vehicle, and the due process constriction on the state should be afforded to any person or entity with an interest in the instrumentality of the criminal offense. A private interest in a vehicle is transferable, whereas a driver's license is unique to that individual. Further, an individual whose vehicle is seized pursuant to R.C. 4511.195 must wait until the initial appearance on the criminal violation, which must occur within five days of arrest, for the first opportunity to recover the vehicle. Such a delay, with no statutory mechanism to provide for immediate review, significantly increases the weight of the private interest of the vehicle owner.

Risk of Erroneous Deprivation

**{¶ 35}** The state argues that the risk of erroneous deprivation of an individual's vehicle is exceedingly low. While we agree that a clerical search performed by the arresting officer may quickly and accurately determine whether

an individual has a prior conviction warranting seizure of the vehicle, that is no comfort to the owner of a vehicle that has been seized because someone else operated it in violation of the law. Under R.C. 4511.195(B)(1), the officer shall seize the vehicle operated by the arrestee regardless of the identity of the vehicle's actual owner or the manner in which the vehicle operator obtained the vehicle. Resolution of that issue must wait until the arrestee's initial appearance for the underlying drunk-driving charge and depends on a favorable determination of several factors, including whether "the vehicle owner knew or should have known after a reasonable inquiry that the vehicle was used or involved or likely to be used or involved in the offense or violation [and] * * * the vehicle owner or his agent expressly or impliedly consented to the use or involvement of the vehicle in the offense or violation." R.C. 4503.235(B)(3)(b)(i) and (ii). Thus, it is obvious that the risk of erroneous deprivation is extremely high under the summary seizure provisions of R.C. 4511.195. Unlike the relatively straight forward factual situations involved in an administrative license suspension, vehicle seizure and immobilization are inextricably linked with the drunk-driving charge, which presents a wide array of factual issues that have a direct impact on the resolution of the vehicle impoundment. Because the factual disputes are not resolved until trial on the criminal charge, the likelihood of erroneous deprivation is significantly higher than in an ALS. Although the erroneous deprivation ultimately would be terminated, given the importance of the property interest affected, even the temporary denial of possession and use of the vehicle inflicts too severe a hardship on the individual wrongfully deprived.

Governmental Interest

**{¶ 36}** As previously stated, the government has a compelling interest in protecting the public by removing from Ohio's streets and highways persons who operate motor vehicles while intoxicated. However, the statutory scheme of R.C. 4511.195 is designed to remove from public roadways the *instrumentality* of the drunk-driving offense regardless of whether the vehicle is owned by the person arrested for that offense. The lack of a direct effect on public safety is readily apparent. For example, R.C. 4511.195, which is unique among the states, treats an owner of a stolen vehicle operated by a drunk driver the same as the owner-operator who drives while drunk. The owner of the stolen vehicle, which is now in the hands of the police, nonetheless must wait until the initial appearance of the drunk driver. This could be as long as five days, during which time the vehicle owner is subject to impoundment fees. As the statute is one step more removed from the clear compelling interest of public safety, the governmental interest under R.C. 4511.195 is decreased.

**{¶ 37}** Recently, the United States District Court for the Southern District of Ohio reviewed a constitutional challenge to the due process afforded under R.C. 4507.38, which requires an arresting officer to seize and immobilize any vehicle operated by an individual driving without a valid driver's license. *Kutschbach v. Davies* (S.D.Ohio 1995), 885 F.Supp. 1079, 1093. A comparison of R.C. 4507.38 with 4511.195 reveals the two statutes to be virtually identical in all relevant respects. After subjecting R.C. 4507.38 to analysis under the *Mathews* test, Judge Beckwith in *Kutschbach* stated that the violation to due process by the statute was "manifest." The court concluded that "[t]he procedures set forth in the statute virtually ensure the erroneous deprivation of *** property. No governmental interest justifies a delay of several days before the government is required to establish probable cause for the detention of a [a person's] vehicle." *Id.* at 1093.

**{¶ 38}** Likewise, we conclude that the governmental interest advanced under R.C. 4511.195 is insufficient to outweigh the private interest in a vehicle and the attendant risk of erroneous deprivation under the present statutory scheme, and does not justify the deprivation of a vehicle owner's property interest when that vehicle is operated by a third party. R.C. 4511.195 is unconstitutional as applied to the owner of a vehicle that has been seized and immobilized because the vehicle was being operated by a third person when that person was arrested on a drunk-driving charge.

**{¶ 39}** Accordingly, we affirm the judgment of the court of appeals as to Hochhausler's due process challenge to R.C. 4511.191. Further, having severed the "no stay" portion of R.C. 4511.191(H), we reverse and remand that issue, which was raised by Hochhausler through a motion to dismiss, to the court of appeals to determine whether Hochhausler was unfairly prejudiced. Based on our determination of R.C. 4511.195, we reverse the judgment of the court of appeals as to the issue of the seizure and immobilization of Omni's vehicle.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

DOUGLAS, RESNICK and KARPINSKI, JJ., concur.

F.E. SWEENEY, J., concurs, except with paragraph three of the syllabus and the related discussion in the opinion, to which he dissents.

PATTON and COOK, JJ., concur in part and dissent in part.

JOHN T. PATTON, J., of the Eighth Appellate District, sitting for WRIGHT, J.

DIANE KARPINSKI, J., of the Eighth Appellate District, sitting for PFEIFER, J.

_____

**COOK, J., concurring in part and dissenting in part.**

{¶ 40} I concur with paragraph one of the syllabus but respectfully dissent from paragraphs two and three.

I.

*The "No Stay" Provision*

{¶ 41} I dissent from paragraph two of the syllabus, holding that the "no stay" provision violates the doctrine of separation of powers in that it interferes with the exercise of a court's inherent powers. The majority reaches this conclusion by reasoning that among a court's inherent powers necessary "'to secure and safeguard the free and untrammeled exercise of their judicial functions'" and to secure "'the orderly and efficient administration of justice'" is a court's ability to grant or deny stays. Among the authority the majority cites for this proposition is *Hale v. State* (1896), 55 Ohio St. 210, 212-213, 45 N.E. 199, 200. In *Hale*, we held that the court possesses the inherent authority to issue contempt orders. Unlike the power to stay, the power to issue contempt orders deals with the court's ability to regulate the conduct of the parties and witnesses before it and to ensure that each party is given a fair opportunity to collect and present its evidence. Such safeguarding is at the core of a court's ability to administer justice. However, such is not always the case with regard to the court's power to stay proceedings.

{¶ 42} By the majority's own standard, a court's inherent ability to grant or deny a stay is not a general power, but is an extraordinary remedy limited to those times when necessary to the administration of justice. For example, the majority cites *Landis v. N. Am. Co.* (1936), 299 U.S. 248, 254-255, 57 S.Ct. 163, 166, 81 L.Ed.2d 153, 158, where the Supreme Court held that a stay of proceedings is incidental to the court's inherent power to control and manage its docket and will be granted only in the rare case. Because the appeal of an ALS is limited in scope and defined by statute, courts do not need to stay the license suspension for the outcome in the criminal case in order to streamline the issues in the appeal. See

R.C. 4511.191(H)(2). Therefore, such a stay does not implicate a court's ability to manage or control its docket as contemplated in *Landis*, *supra.*

{¶ 43} A stay is also necessary to the administration of justice where a court seeks to prevent the undue hardship or irreparable injury resulting from the enforcement of a determination which may have been wrong. See, *e.g.*, *State v. Smith* (1989), 42 Ohio St.3d 60, 61, 537 N.E.2d 198, 200 (courts have no inherent authority to suspend criminal sentences *except* to suspend execution of a sentence pending appeal or a motion for a new trial).

{¶ 44} Initially, we note that the circumstances under which an ALS is imposed all but ameliorates the wrong determination concern. An ALS is imposed for one of two reasons -- refusing to submit to chemical testing or failing the test. Because the ALS for refusing the test is not ultimately dependent on the accused's conviction of an OMVI offense, that judicial determination has no bearing on the propriety of the enforcement of the ALS. On the other hand, where an ALS is imposed for failing the test, there is a good indication that the driver was, in fact, operating a motor vehicle with a prohibited blood-alcohol level. While the accused still enjoys the judicial safeguards requisite to a criminal conviction, the interim suspension imposed for remedial purposes is justified. The suspension is reasonably likely to remove a threat from the roadways pending a judicial determination of guilt, thereby promoting public safety.

{¶ 45} Moreover, the granting of a license is a privilege and not an absolute property right, *State v. Williams* (1996), 76 Ohio St.3d 290, 667 N.E.2d 932; *Dobbins v. Ohio Bur. of Motor Vehicles* (1996), 75 Ohio St.3d 533, 538, 664 N.E.2d 908, 912; *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 51, 554 N.E.2d 97, 102, and the temporary loss or suspension of this privilege is an "inconvenience." *Columbus v. Adams* (1984), 10 Ohio St.3d 57, 60, 10 OBR 348, 350, 461 N.E.2d 887, 890. Thus, an ALS imposed under R.C. 4511.191 does not by law qualify as an undue hardship or irreparable injury.

**{¶ 46}** A stay of an ALS is neither necessary to control or manage a court's docket nor necessary to prevent undue hardship or irreparable harm. Accordingly, I would find that the "no stay" provision does not violate the separation of powers doctrine because the power to stay the ALS is not an inherent power essential to the administration of justice.

**{¶ 47}** By allowing the judiciary to stay the ALS, the majority thwarts the remedial purpose of driver's license suspensions. The ALS is intended to protect the public by removing drunk drivers from our highways until a judicial determination of the four statutory criteria set forth in R.C. 4511.191(H)(1) is made. If R.C. 4511.191 is to have any meaningful remedial purpose, the "no stay" provision must be enforced.

II.

*Due Process and R.C. 4511.195*

**{¶ 48}** The majority also holds that R.C. 4511.195 violates due process *as applied* to the owner of a vehicle that has been seized and immobilized when the vehicle was being operated by a third party, primarily because a possible five-day delay exists before an "innocent owner" can assert this defense. This possible delay, according to the majority, "significantly increases the weight of the private interest of the vehicle owner," causes an "obvious" and "extremely high" risk of erroneous deprivation, and removes the statute one more step from a compelling public safety interest. Yet, the trial court here has found that Omni, a closely held corporation, could not be an "innocent owner" in light of Hochhausler's roles as Omni's president and majority shareholder. That finding has not been challenged and, therefore, is *not* at issue today.

**{¶ 49}** In *Calero-Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452, the United States Supreme Court considered and rejected a due-process challenge to the seizure of a yacht when its owner was not involved in any criminal activity and was unaware that the lessee of the yacht

21

had engaged in illegal activities upon it. The court held that a seizure without prior notice and opportunity to be heard does not violate due process where the seizure serves a significant government interest, there is a special need for prompt action, and the seizure is not initiated by self-interested parties. *Id.* at 678-680, 94 S.Ct. at 2089-2090, 40 L.Ed.2d at 465-466.

{¶ 50} As was held in *Calero-Toledo*, due process is not violated by the seizure in this case. This seizure serves the important government interest of promptly eliminating recidivist drunk driving by immediately removing the instrumentality of the drunk-driving offense. There also exists a special need for prompt seizure, since a car, like a yacht, could be removed to another jurisdiction or concealed if advance notice of the seizure were to be given. *Id.* at 679, 94 S.Ct. at 2090, 40 L.Ed.2d at 466. The seizure is not initiated by self-interested private parties, but rather is initiated by law enforcement officers under narrowly tailored circumstances. The seizure is warranted only when a driver has at least one prior OMVI conviction within the preceding five years, the driver's record of prior arrests is easily verifiable, the arrest may be weighed according to objective criteria, and the statute employs extensive notice provisions.

{¶ 51} Moreover, persons affected by the seizure are given a prompt opportunity to be heard. The driver or innocent owner is given an opportunity to appeal the immobilization at the initial hearing, which must be held *within* five days of the arrest. The request for an appeal may also be made at any time thereafter.

{¶ 52} For these reasons, I cannot agree that R.C. 4511.195 violates due process or that the "no stay" provision of R.C. 4511.191 violates the separation of powers doctrine.

PATTON, J., concurs in the foregoing opinion.

_____