[Cite as *State v. Shutway*, 2016-Ohio-432.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CHAMPAIGN COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 2014-CA-26 |
| | : | |
| v. | : | Trial Court Case No. 2013-CRB-1144 |
| | : | |
| JOHN A. SHUTWAY | : | (Criminal Appeal from |
| | : | Municipal Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 5th day of February, 2016.

. . . . . . . . . .

BREANNE PARCELS, Atty. Reg. No. 0089370, Champaign County Municipal Prosecutor, 205 South Main Street, Urbana, Ohio 43078
         Attorney for Plaintiff-Appellee

JOHN A. SHUTWAY, 573 East Church Street, Urbana, Ohio 43078
         Defendant-Appellant-Pro Se

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, John A. Shutway, appeals pro se from his conviction in the Champaign County Municipal Court for violating an order of the Champaign County Health District in violation of R.C. 3707.48. For the reasons outlined below, the judgment

of the trial court will be reversed.

**{¶ 2}** On October 15, 2013, Shutway was charged by complaint with one count of resisting arrest, one count of failure to comply with the order or signal of a police officer, and one count of obstructing official business. In addition, Shutway was charged with one minor misdemeanor count of violating R.C. 3707.48, which provides:

> No person shall violate * * * any order or regulation of the board of health of
>
> a city or general health district made in pursuance thereof, obstruct or
>
> interfere with the execution of such order, or willfully or illegally omit to obey
>
> such order.

**{¶ 3}** Shutway pled not guilty to all the charges and filed multiple pretrial motions, including a motion to suppress, which was denied by the trial court. After several hearings and continuances, the matter eventually went to trial on July 17, 2014. At trial, the trial court dismissed the charges for resisting arrest and failure to comply on Shutway's motion, and the jury found Shutway not guilty of obstructing official business. Thereafter, the minor misdemeanor charge for violating R.C. 3707.48 was tried separately before the bench.

**{¶ 4}** The minor misdemeanor charge stemmed from allegations that Shutway failed to have the city water service reconnected to his residence in Urbana, Ohio, after it was shut off due to the nonpayment of his water bill, and then continued to live on the property after the Champaign County Health District ("Health District") had it condemned. Specifically, the State alleged in its complaint that on October 13, 2013, Shutway "did violate an order of the Champaign County Health District by willfully and illegally omitting to obey said order issued by the Champaign County Health District 1008.2.3, failed to

either vacate or correct said violation (i.e. shut off water)." Complaint (Oct. 15, 2013), Champaign County Municipal Court Case No. 2013-CRB-1144, Docket No. 5, p. 1.

{¶ 5} At trial, the Superintendent of Urbana's Water Division, Robert Munch, testified that the Water Division had provided water service to Shutway for 14 years, but had turned off Shutway's service in May and July 2013, due to his outstanding water bill. During his testimony, Munch identified Shutway's application for water service, which was admitted as Plaintiff's Exhibit A. Munch also identified a letter he wrote to Shutway on October 31, 2013, notifying Shutway that his water service had been restored. Munch's letter was admitted as Plaintiff's Exhibit B.

{¶ 6} Russ Wellman, an Environmental Technician from the Health District, testified that on August 6, 2013, the Water Division notified the Health District that Shutway's water had been turned off. Wellman indicated that property without running water violated Section 1008 of the Housing Maintenance Code of the Champaign Health District ("Housing Maintenance Code"). After the Health District was notified of the violation, Wellman testified that on August 6, 2013, he personally left a notice at Shutway's residence regarding the water being shut off, as no one from the residence would answer the door. A written report prepared by Wellman, which was admitted as Plaintiff's Exhibit C, also noted that Wellman had "[l]eft water shut off notice in door."

{¶ 7} After receiving no notice that Shutway's water had been turned back on, Wellman testified that he returned to Shutway's residence two days later on August 8, 2013, and posted a "Condemned" sign near the front door of the property. A photograph of the sign was admitted as Plaintiff's Exhibit D. Wellman's testimony and his written report indicates that on August 14, 2013, he attempted to hand Shutway a copy of the

August 6th notice during a Health District board meeting that Shutway attended, but Shutway refused to take the notice. Wellman, however, indicated that Shutway was eventually served with the notice on August 20, 2013, when Sheriff's Deputy John McNeely personally handed it to him at court.

{¶ 8} The State also presented testimony from Deputy Culler with the Champaign County Sheriff's Office. Culler testified that he observed indicators that Shutway's residence was occupied on October 13, 2013, while he was inside the residence attempting to arrest Shutway for unrelated charges. Specifically, Culler testified that he observed Shutway's son playing video games on the couch, electricity turned on, and food in the kitchen. In addition, Culler observed Shutway himself in the basement. Deputy Glenn Kemp, who was also inside Shutway's residence that day, testified that he observed possessions in the home and that he poured a glass of water for Shutway's wife from a container that was on the kitchen counter, not from the tap. Culler testified that at no point in time did Shutway indicate that he resided elsewhere, and it was obvious to him that Shutway was living at that location. Culler also testified that he saw the Health District's "Condemned" sign near the door when he entered the residence.

{¶ 9} Based on the testimony and evidence presented at trial, the trial court found Shutway guilty of violating R.C. 3707.48. Specifically, the trial court found there was unrebutted testimony establishing that Shutway was inside the residence while it was marked as condemned, and that simply being present on the property was a violation of the Health District's order. As a result of his conviction, the trial court ordered Shutway to pay a $100 fine and court costs.

{¶ 10} Shutway now appeals from his conviction, raising eight assignments of error

for review. However, because it is dispositive of this appeal, we need only address Shutway's Fifth Assignment of Error, which is as follows:

> AS A MATTER OF LAW, THE CHAMPAIGN COUNTY HEALTH DISTRICT FAILED TO PROVIDE THE DUE PROCESS OF LAW WHEN IT FAILED TO SERVE "NOTICE" UPON THE DEFENDANTS PURSUANT TO HEALTH DISTRICT REGULATION OF A CLAIMED VIOLATION AND PLACED A "CONDEMNED" PLACARD ON THE APPELLANTS' HOUSE.

{¶ 11} Under his Fifth Assignment of Error, Shutway argues that the Health District did not provide him with proper notice of the Housing Maintenance Code violation for his failure to have the city water service reconnected to his property, and that said failure violates the notice requirements of the Housing Maintenance Code and due process of law. We agree.

{¶ 12} "Due process under the Ohio and United States Constitutions demands that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner where the state seeks to infringe a protected liberty or property interest." (Citations omitted.) *State v. Hochhausler*, 76 Ohio St.3d 455, 459, 668 N.E.2d 457 (1996). "Due process is a flexible concept, and the procedures required vary as demanded by circumstances." *Riffe v. Ohio Real Estate Appraiser Bd.*, 130 Ohio App.3d 46, 51, 719 N.E.2d 587 (1998), citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). *Accord Chapman v. Chapman,* 2d Dist. Montgomery No. 21652, 2007-Ohio-2968, ¶ 21; *Thrower v. City of Akron*, 9th Dist. Summit No. 21153, 2003-Ohio-1307, ¶ 24.

{¶ 13} Section 1012.2 of the Housing Maintenance Code governs the form of

notice that is required to be given owners of property when the Health District finds a residence unfit for habitation.   That section of the code provides:

Whenever the Health District has declared a dwelling or multi-family dwelling as unfit for human habitation and constituting a nuisance he shall give notice to the owner of such declaration and placarding of the dwelling or multi-family dwelling as unfit for human habitation.   Such notice shall:

(1)   Be in writing; and

(2)   Include a description of the real estate sufficient for identification; and

(3)   State the time occupants must vacate the dwelling units; and

(4)   Said notice shall further state that, if such repairs, reconstruction, alterations, removal, or demolition are not voluntarily completed within the stated time as set forth in the notice, the Health District shall institute such legal proceedings charging the person or persons, firm, corporation or agent with a violation of this regulation.

{¶ 14} In addition, Section 1012.3 of the Housing Maintenance Code provides the following regarding the required service of notice:

Service of notice to vacate shall be as follows:

(1)   By delivery to the owner personally, or by leaving the notice at the usual place of abode of the owner with a person of suitable age and discretion; or

(2)   By depositing the notice in the U.S. Post Office addressed to the owner at his last known address with postage prepaid thereon; or

(3)   By posting and keeping posted for twenty-four hours a copy of the

notice in placard form in a conspicuous place on the premises to be vacated.

{¶ 15} As previously noted, Russ Wellman, the Environmental Technician from the Health District, testified regarding the notice that was provided to Shutway by the Health District. Both Wellman's testimony and Plaintiff's Exhibit C (the written report prepared by Wellman) establish that Wellman left a "water shut off notice" on Shutway's door on August 6, 2013. The same evidence also establishes that Wellman unsuccessfully attempted to serve Shutway with the same notice at the Health District board meeting on August 14, 2013, but that personal service of the notice was ultimately achieved on August 20, 2013.

{¶ 16} Taken as a whole, Wellman's trial testimony indicates that the August 6th notice concerned the Housing Maintenance Code violation for the water being disconnected at Shutway's residence. However, noticeably absent from the trial record is any testimony or exhibits explaining the specific contents of that notice. Although the August 6th notice was filed with the trial court on the day of trial, it is clear from the trial transcript that the notice was never admitted as a trial exhibit, as the State never presented Wellman with the notice to authenticate it during trial, nor offered the notice as a trial exhibit for the trial court to consider. Wellman also testified that he did not have a copy of the notice with him at trial.

{¶ 17} We note that the August 6th notice was admitted during the suppression hearing in this case, during which Wellman testified that the notice ordered Shutway to either vacate the property or get the water reconnected within 48 hours, and that his failure to do so would result in possible legal action. Unfortunately, none of this

information was presented during Shutway's bench trial. Furthermore, there is no stipulation in the record that the evidence admitted at the suppression hearing would also be considered by the trial court in determining Shutway's guilt at trial.

{¶ 18} The "Condemned" sign Wellman posted at Shutway's residence does not shed any light on this matter either. At trial, Wellman agreed that "there is no way to tell what the condemnation is by reading the ['Condemned'] sign." Trial Trans. Vol. II (July 17, 2014), p. 111. Plaintiff's Exhibit D, the photograph of the "Condemned" sign, confirms that there was no specific Housing Maintenance Code violation nor any specific order from the Health District affixed to the sign.

{¶ 19} Therefore, although reflected in other parts of the record, we find nothing in the record of the bench trial reflecting that the Health District served Shutway with a notice that ordered him to do anything, let alone vacate his property or reconnect the water within 48 hours. Rather, based on the evidence submitted at trial, it appears that the notice served on Shutway merely informed him that his water had been disconnected in violation of the Housing Maintenance Code. This is insufficient and does not comply with the notice requirements of Section 1012.2 of the Housing Maintenance Code.

{¶ 20} Moreover, because the State failed to introduce any evidence at trial regarding the Health District's order, the State cannot support its allegation that Shutway violated R.C. 3707.48. While the State clearly had access to evidence of the Health District's order, it nevertheless glossed over that fact at trial and failed to enter it into the trial record. Due to the State's technical failure of not offering any evidence showing that the Health District provided a proper notice to Shutway ordering him to either vacate his residence or have the water reconnected within 48 hours, it was erroneous for the trial

court to convict Shutway of violating R.C. 3707.48, as there is simply no order reflected in the trial record from which it could be argued that Shutway willfully and illegally disobeyed.

**{¶ 21}** Shutway's Fifth Assignment of Error is sustained.

**{¶ 22}** Because our decision on Shutway's Fifth Assignment of Error is dispositive of the appeal, we need not address his remaining seven assignments of error, as they are rendered moot. Having sustained Shutway's Fifth Assignment of Error, the judgment of the trial court convicting Shutway of violating R.C. 3707.48 is reversed.

. . . . . . . . . . . . .

DONOVAN, P.J. and FROELICH, J., concur.

Copies mailed to:

Breanne Parcels
John A. Shutway
Hon. Teresa L. Liston, Retired, Sitting by Assignment (c/o Hon. Gil S. Weithman)