[Cite as *State v. Emmons*, 2016-Ohio-5384.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-150636 |
| | | TRIAL NO. B-1501487 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| DEBRA EMMONS, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: August 17, 2016

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellee.

**DEWINE, Judge.**

{¶1} This is an appeal by the state from a trial court's decision suppressing evidence of illegal drug possession obtained during a traffic stop. The trial court found that a seven-minute traffic stop was unreasonably prolonged by the arresting trooper's questioning of the driver and passenger about matters unrelated to the reason for the stop. We conclude that the officer's questions did not convert the stop into something other than a lawful seizure because the questions did not measurably extend the duration of the stop. Moreover, we hold that even if the traffic stop had been prolonged, reasonable suspicion under the totality of the circumstances justified the ongoing detention. Therefore, we reverse the trial court's judgment.

## I. A Seven-Minute Traffic Stop

{¶2} Debra Emmons was arrested for illegal drug possession following a traffic stop of a vehicle in which she was a passenger. The traffic stop—which lasted seven minutes from the time of the stop until Ms. Emmons's arrest—was captured on video and introduced into evidence at Emmons's motion-to-suppress hearing.

{¶3} State Trooper Kyle Doebrich pulled over a car driven by Hubert Barrett for failing to stop at a marked stop line. Immediately after being stopped, Mr. Barrett told the trooper he had a driver's license but did not have it with him. Ms. Emmons said that the car was hers and that she had identification. The trooper then asked where they were from and where they were headed. He testified that Emmons answered some of the questions he had directed to Barrett, and that both seemed very nervous.

{¶4} Next, the trooper asked Emmons for her identification. While she was retrieving it, he quizzed Barrett about small wounds on the backs of his hands. Mr. Barrett responded that his dog had caused them. The trooper testified that the wounds did not look like they had come from a dog. He knew from his training and experience that the wounds were track marks—that is, wounds caused by using a hypodermic needle to inject drugs such as heroin or cocaine.

{¶5} The trooper instructed Barrett to get out of the car so he could verify his personal information on the cruiser's computer. Mr. Barrett volunteered that there was an open capias for him. The trooper questioned Barrett about the capias, and about where he and Emmons had been. He patted Barrett down and placed him in the cruiser. After running Barrett's name and social security number in his computer, he learned that Barrett's driver's license was valid and that he had previous felony drug convictions. In response to questioning, Mr. Barrett stated that the prior charges involved cocaine, but denied recent drug use or that his wounds were drug related.

{¶6} As Trooper Doebrich continued to use his computer, he inquired into Barrett's relationship with Emmons, their activities that day, and their address. The trooper noted that Barrett stammered in his responses and that some of his answers made no sense and conflicted with statements made by Emmons.

{¶7} Trooper Doebrich had not yet written Barrett a citation when he left the cruiser to speak to Emmons, who was still seated in her car. Noticing that she was picking at the skin of her thumbs, he asked her why she was so nervous. He also quizzed her about what appeared to be dried blood on her shirt sleeve, in the area just inside her elbow. He knew from experience that the small amount of blood and

3

its location "over a large accessible vein [were] common with using a hypodermic needle." After she agreed to his request to pull up her sleeves, the trooper noticed fresh track marks on her arms. Ms. Emmons admitted that she had injected heroin about four days earlier. He asked if she had anything illegal on her and she said no. He then asked if she minded showing him her purse. She handed it to him, and he immediately found a needle and placed Emmons under arrest. A subsequent search of Emmons's car revealed a baggie of cocaine.

{¶8} Trooper Doebrich estimated that he had made hundreds of traffic stops in his three years with the Ohio State Highway Patrol. He testified that a traffic stop resulting in the issuance of a traffic citation ordinarily takes about seven to 12 minutes.

{¶9} The trial court issued a written decision three weeks after the suppression hearing, granting the motion and suppressing the physical evidence seized by the trooper. The trial court concluded that the trooper had no reasonable articulable suspicion to ask Barnett to get out of the car, to ask questions unrelated to the traffic violation, or to ask Emmons for identification. It reasoned that, by asking "irrelevant" questions, the trooper had impermissibly prolonged the detention beyond what was required for the traffic investigation. Finally, the court evaluated the individual circumstances of the stop in isolation and determined that none of them led to a reasonable suspicion of criminal activity beyond the traffic violation.

## II. The Motion to Suppress Was Improperly Granted

{¶10} This appeal followed. In its sole assignment of error, the state asserts that the trial court erred when it granted the motion to suppress.

4

{¶11} Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. We must accept the trial court's factual findings if they are supported by competent, credible evidence, but we review de novo the trial court's application of the law to those facts. *Id.* As a general matter, determinations of reasonable suspicion and probable cause are reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

**A. The Traffic Stop Was Not Unreasonably Prolonged**

{¶12} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. A traffic stop of a vehicle and the detention of its occupants, however brief, is a "seizure" for Fourth Amendment purposes. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979); *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The temporary seizure of a vehicle's occupants in a traffic stop ordinarily remains reasonable during the officer's investigation into matters related to the justification for the stop. *Arizona v. Johnson*, 555 U.S. 323, 333, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009).

{¶13} An officer's traffic stop investigation involves more than making a determination whether to issue a traffic citation or warning. *Rodriguez v. United States*, ____ U.S. ____, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015). An officer ordinarily must check the driver's license, vehicle registration, and proof of insurance and determine whether there are outstanding warrants against the driver. *Id.*; *Prouse* at 659. *See State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, ¶ 12.

5

{¶14}   Contrary to the trial court's finding, it is well settled that once a vehicle has been lawfully detained for a traffic violation, police officers may order the driver to get out of the car without violating the Fourth Amendment's proscriptions against unreasonable searches and seizures.  *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).   An officer may also ask the driver and passengers about matters unrelated to the traffic stop itself, so long as those questions do not measurably extend the duration of the stop.  *Rodriguez* at 1615; *Johnson* at 333.

{¶15}   As the United States Supreme Court has repeatedly held, mere police questioning does not constitute a seizure.  *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).   "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage."  *Muehler* at 101*,* citing *Bostick* at 434-435.   As long as a detention is not prolonged by the questioning, there is no additional seizure within the meaning of the Fourth Amendment.  *Id.*  For example, officers do not need reasonable suspicion to ask a detained individual for her name, date and place of birth, or immigration status.  *Id.*  In addition, a police officer may request identifying information from a passenger in a vehicle stopped for a traffic violation without particularized suspicion that the passenger poses a safety risk or is violating the law.  *United States v. Alexander*, 467 Fed.Appx. 355, 362 (6th Cir.2012); *United States v. Fernandez*, 600 F.3d 56 (1st Cir.2010); *United States v. Soriano-Jarquin*, 492 F.3d 495 (4th Cir.2007).   *See State v. Chagaris*, 107 Ohio App.3d 551, 669 N.E.2d 92 (9th Dist.1995).

{¶16} A seizure justified solely by a traffic violation may become unlawful only if it is prolonged beyond the time that is reasonably required for the issuance of a citation for the violation. *See Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). In other words, a traffic stop that exceeds the time needed to handle the matter for which the stop was made is an unlawful seizure. *Rodriguez* at 1612. In assessing the reasonableness of a traffic stop, courts must examine the totality of the circumstances to determine if the police diligently pursued the investigation into the purpose for the stop. *State v. Reece*, 1st Dist. Hamilton No. C-140635, 2015-Ohio-3638, ¶ 21, citing *Rodriguez* at 1614.

{¶17} In this case, the traffic stop was not unreasonably prolonged beyond the time required for the initial purpose of the stop. There is no dispute that the stop for the stop-sign violation was lawful. Because the occupants of the car were lawfully detained for the traffic violation, Trooper Doebrich did not need reasonable suspicion of further criminal activity to ask for the driver's license or to order the driver from the car. His request for the passenger's identification added no appreciable additional time to the detention. Confronted with a driver carrying no license or identification, who admitted to an open arrest warrant, the trooper diligently pursued his traffic investigation. The arrest of the passenger occurred well within the seven-to-12-minute window for an ordinary traffic citation. Nothing in the record suggests that the detention of Emmons "was of sufficient length to make it constitutionally dubious." *See Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, 865 N.E.2d 1282, at ¶ 14. Therefore, we hold that the trial court erred by concluding that the seven-minute traffic stop had been unlawfully prolonged.

### B. Reasonable Suspicion of Criminal Activity

{¶18} Moreover, the circumstances in this case would have warranted a prolonged detention. A traffic stop may be prolonged upon the discovery of additional facts "that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." *Batchili* at ¶ 15. "The 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." *Id.* at paragraph two of the syllabus, applying *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002). In this case, the trial court considered in isolation multiple actions by the trooper and concluded that none of them justified Trooper Doebrich's suspicion of criminal activity. The court's approach failed to take into account the totality of the circumstances, which necessarily included the trooper's "experience and specialized training" that would allow him "to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained person.' " *Arvizu* at 273, quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶19} Trooper Doebrich had plenty of reasons to be suspicious. He was confronted with two nervous individuals whose answers conflicted. The driver had no license or identification and admitted to an open warrant for his arrest. He stammered and lied about the origins of track marks on his hands, even while acknowledging prior drug use. Ms. Emmons had what looked to be dried blood on her sleeve and fresh track marks on her arm, and admitted to recent heroin use. Fair

to say, the detention of Emmons was supported by specific facts that gave rise to the suspicion of ongoing drug activity.

### III. Conclusion

{¶20}  The trial court erred by finding that the traffic stop was unreasonably prolonged beyond what was necessary to address the traffic violation and by finding that Trooper Doebrich's investigation constituted an impermissible extension of the seizure.  Furthermore, the court erred by failing to examine the reasonableness of the trooper's suspicion under the totality of the circumstances and by finding that the trooper did not have reasonable suspicion "of anything beyond a traffic violation."  Consequently, we sustain the sole assignment of error.  We reverse the judgment of the trial court and remand this matter for further proceedings consistent with law and this opinion.

Judgment reversed and cause remanded.

FISCHER, P.J., concurs.
HENDON, J., concurs separately.

HENDON, J., concurring separately.

{¶21}  While I have trouble accepting the trooper's stated justification for questioning the passenger, I am constrained to concur that there was no constitutional deprivation.

Please note:
    The court has recorded its own entry on the date of the release of this opinion.