[Cite as *State v. Mast*, 2019-Ohio-4644.]

COURT OF APPEALS
HOLMES COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J<br>Plaintiff-Appellee |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case Nos. 19CA004 and 19CA005 |
| ROY H. MAST | |
| Defendant-Appellant | O P I N IO N |

CHARACTER OF PROCEEDINGS:        Appeal from the Holmes County
                                 Municipal Court, Case No. 18CRB107
                                 and 18TRC308

JUDGMENT:                        Reversed and Remanded

DATE OF JUDGMENT ENTRY:          November 8, 2019

APPEARANCES:

For Plaintiff-Appellee                  For Defendant-Appellant

ROBERT K. HENDRIX                       JEFFREY KELLOGG
Assistant Prosecuting Attorney          5 South Washington Street
Holmes County, Ohio                     Millersburg, Ohio  44654
164 E. Jackson Street
Millersburg, Ohio  44654

*Hoffman, J.*

{¶1} Appellant Roy H. Mast appeals the judgment entered by the Holmes County Municipal Court convicting him of obstructing official business (R.C. 2921.31) and driving while under the influence of alcohol (R.C. 4511.19(A)(1)(a)) and sentencing him to 200 days in jail with 170 days suspended. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2} At about 10:00 a.m. on February 7, 2018, Appellant appeared at the Holmes County Sheriff's Department to file a complaint. Lt. Eric Troyer was working at the intake window. He immediately noticed Appellant's speech was slurred, his eyes were glassy and bloodshot, and he had an odor of alcohol about his person.

{¶3} Lt. Troyer told Deputy Terry Byland Appellant was in the lobby wanting to make a report. Dep. Byland came to the lobby to speak with Appellant. Appellant told the deputy he wanted to file a complaint about his ex-landlord threatening to whip him with a bull whip for not scraping manure on a Sunday. The deputy asked for Appellant's driver's license, which Dep. Byland routinely does to get information from a citizen seeking to file a complaint. Appellant fumbled through his wallet before locating the license.

{¶4} Because Dep. Byland is unable to smell, he did not notice the odor of alcohol, although both Lt. Troyer and Lt. Tim Stryker informed him they noticed the odor of alcohol about Appellant. Dep. Byland noticed Appellant's speech was slurred and his eyes were bloodshot and glassy. Appellant swayed while talking with officers, and at one point had to grab a table for balance. Noting Appellant was alone, Lt. Stryker and Dep. Byland repeatedly asked Appellant how he arrived at the Sheriff's Department. Appellant initially stared at the officers, and did not answer the question. Appellant eventually

responded, "Forward."   Dep. Byland asked Appellant if he drove there.   Appellant responded, "No, I got an airplane waiting on me."

{¶5}   Upon further questioning, Appellant admitted consuming alcohol the night before, but denied consuming alcohol that day.   The officers asked Appellant to step outside to conduct field sobriety tests.  Lt. Stryker pointed to a vehicle in the parking lot and asked if the car was the vehicle Appellant drove to the Sheriff's Department.  Appellant eventually admitted he drove to the office, leaving Dresden, Ohio around 8:00 in the morning.  He continued to deny drinking or smoking marijuana in the morning, and claimed he had three beers the night before.

{¶6}   Appellant refused to perform field sobriety tests and refused to submit to chemical testing.  He was arrested for operating a motor vehicle under the influence of alcohol.  Dep. Byland submitted an affidavit for a search of Appellant's blood, and the warrant was issued.

{¶7}   Appellant was charged with one count of obstructing justice, and one count of operating a motor vehicle under the influence.  Appellant filed a motion to suppress, which was overruled after hearing.  The case proceeded to jury trial in the Holmes County Municipal Court.  Appellant was convicted as charged and sentenced to 90 days in the Holmes County Jail with 80 days suspended for obstructing official business, and 180 days in the Holmes County Jail for operating a motor vehicle under the influence of alcohol, with 160 days suspended, to be served consecutively.

**{¶8}** It is from the February 5, 2019 judgment of conviction and sentence Appellant prosecutes this appeal[1], assigning as error:

THE TRIAL COURT ERRED IN DENYING THE DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE HIS PERSON WAS SEIZED IN VIOLATION OF HIS RIGHTS AS GUARANTEED BY THE 4th AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 14 OF THE OHIO CONSTITUTION.

**{¶9}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the

---

[1] Appellant filed separate notices of appeal from the OVI conviction (19CA004) and the obstructing official business conviction (19CA005). This Court consolidated the appeals on July 18, 2019, with 19CA004 the controlling case number and both case numbers to be shown on all future pleadings.

trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶10}** When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

**{¶11}** Appellant first argues the court erred in finding the officers had a reasonable suspicion of criminal activity to justify detaining him for further investigation after he filed his complaint.

**{¶12}** The Fourth Amendment to the United States Constitution as applied to the states through the Fourteenth Amendment, as well as Ohio Constitution, Article I, Section 14, prohibit the government from conducting warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *State v. Mendoza*, 10th Dist. No. 08AP–645, 2009-Ohio-1182, 2009 WL 690204, ¶ 11, citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only

when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen has a 'seizure' occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), fn. 16; *Brendlin v. California*, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007).

**{¶13}** In determining whether a particular encounter constitutes a seizure, and thus implicates the Fourth Amendment, the question is whether, in view of all the circumstances surrounding the encounter, a reasonable person would believe he or she was not free to leave, *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980), or "not free to decline the officers' requests or otherwise to terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.' " *Id.* at 437, 111 S.Ct. 2382.

**{¶14}** The trial court found Appellant was seized within the meaning of the Fourth Amendment when the officers retained his driver's license, as a reasonable person would not feel free to leave. We agree.

**{¶15}** A consensual encounter remains consensual even if police officers ask questions, ask to see the person's identification, or ask to search the person's belongings, provided the police do not convey a message that compliance with their requests is required. *Id.* at 435, 111 S.Ct. 2382; *Florida v. Rodriguez*, 469 U.S. 1, 4–6, 105 S.Ct. 308, 83 L.Ed.2d 165 (1984); *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). In *Mendenhall, supra,* at 554, 100 S.Ct. at 1877,

64 L.Ed.2d at 509, the United States Supreme Court cited examples of circumstances indicating a seizure occurred even where the person did not attempt to leave, including the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating compliance with the officer's request might be compelled.

**{¶16}** The Tenth District Court of Appeals has held no reasonable person would feel free to terminate an encounter and go about their business when an officer is holding that individual's identification and is using it to run a warrants check. *State v. Westover*, 10th Dist. No. 13AP-555, 2014-Ohio-1959, 10 N.E.3d 211, ¶ 26. In *Westover,* the court rejected the State's argument because Westover was not the driver but a passenger in a stopped car, he could have simply walked away. The court concluded the issue was not whether the defendant could have walked away from the encounter with police, but whether a reasonable person in the situation would have believed they were free to walk away or terminate the encounter. *Id.*

**{¶17}** In the instant case, the video of the encounter begins after Dep. Byland has taken possession of Appellant's driver's license. Dep. Byland testified he commonly takes the license of a person filing a complaint in order to allow dispatch to "build the call." Tr. 28. However, in the instant case, he did not retain the license for the sole purpose of allowing dispatch to jot down Appellant's pertinent information as a person filing a complaint. He testified he also wanted to run Appellant's license to see if it was valid, and he does not always check for warrants when he takes the license of a person filing a complaint at the office. He further testified he kept Appellant's license for the purpose of investigating whether he was driving while intoxicated. Dep. Byland further admitted on

cross-examination Appellant was not free to leave from the point he took the driver's license, until he was certain Appellant did not drive there.

{¶18} Further, the video demonstrates after Appellant handed the officers the complaint form he filled out, Dep. Byland and Lt. Stryker stood between Appellant and the door, and began questioning Appellant about how he got there, whether he had been drinking, and his past OVI arrests. Based on all of the circumstances in this case, we find Appellant was seized within the meaning of the Fourth Amendment when Dep. Byland seized his driver's license and did not return it after Appellant finished the process of filing his complaint against his ex-landlord.

{¶19} By the point in time the officers began questioning Appellant about how he got to the station, the initial consensual encounter had therefore risen to the level of an investigatory stop. Under *Terry v. Ohio, 392 U.S.1,21-22 , 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),* a police officer may stop or detain an individual without probable cause when the officer has reasonable suspicion, based on specific, articulable facts, that criminal activity is afoot. "Reasonable suspicion entails some minimal level of objective justification, 'that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.'" *State v. Sanders*, 5th Dist. Stark No. 2016CA00108, 2017-Ohio-319, ¶13, *quoting State v. Jones*, 188 Ohio App.3d 628, 936 N.E.2d 529, 2010–Ohio–2854, ¶ 17 (10th Dist. Franklin).

{¶20} The trial court found the officers had a reasonable suspicion of criminal activity to justify the detention:

The officers observed a strong odor of alcoholic beverage, bloodshot and glassy eyes, slurred speech, fumbling through his wallet, and swaying. When they began investigate whether or not the Defendant operated a motor vehicle in this condition, the Defendant's answers were both evasive and sarcastic. This Court finds, based upon the evidence presented to the officers at the scene, that it was appropriate to detain the Defendant to determine whether or not he was operating a motor vehicle. The Defendant was alone at the Sheriff's Department, and did not acknowledge another driver.

**{¶21}** Judgment Entry, August 24, 2018.

**{¶22}** We disagree with the trial court's conclusion. Dep. Byland admitted in his testimony there is no law against being drunk in the Sheriff's lobby, and Appellant did not create a disturbance in the lobby. Tr. 29, 38. Therefore, unless Appellant was *driving* while intoxicated, the officers did not have a reasonable suspicion of criminal activity, as his peaceful presence in the lobby in an intoxicated state was not a crime.

**{¶23}** At the point in time in which Appellant's license was taken from him and retained to be checked for validity, officers had not yet questioned Appellant about driving and received the answers the court characterized as "evasive and sarcastic." Appellant had not yet told them he came to Holmes County from Dresden that morning, which is some distance away. Appellant had given them no information prior to being seized which would give rise to reasonable suspicion he was driving that morning.

**{¶24}** None of the officers saw Appellant drive into the parking lot. Although Appellant was alone, we find they had no specific, articulable facts with which to conclude he drove to the office. Lt. Troyer testified Appellant arrived alone and he did not see anyone drop him off; however, on cross-examination he admitted he did not see Appellant's vehicle come into the parking lot. Dep. Byland admitted during the initial encounter in which he took Appellant's license, he was looking for signs of intoxication, but did not know at this point if Appellant drove there. At the time at which Appellant was seized within the meaning of the Fourth Amendment, we find the officers possessed a reasonable suspicion Appellant was intoxicated. However, they did not yet have more than an unparticularlized suspicion or "hunch" Appellant had driven to the Sheriff's office. Therefore, we find they lacked a reasonable suspicion of criminal activity to justify the investigative detention of Appellant after he finished filling out his complaint.[2]

**{¶25}** We find the trial court erred in overruling Appellant's motion to suppress all evidence obtained as a result of the illegal detention of Appellant.[3] The assignment of error is sustained.

---

[2] In his dissent, Judge Gwin notes he believes the officers are duty bound to insure an individual believed to be under the influence of alcohol does not place themselves or the public at risk by potentially walking to the parking lot and driving their motor vehicle while intoxicated. We agree. However, such duty can be accomplished by merely following the individual to the parking lot and observing if the individual enters a motor vehicle to drive way. This could be accomplished without any further detention. Once the individual enters the car to drive away, probable cause to arrest would then exist.

[3] Because we find the initial detention of Appellant violated the Fourth Amendment, we need not address Appellant's remaining arguments concerning his motion to suppress.

{¶26}  The judgment of the Holmes County Municipal Court is reversed.  This case is remanded to that court for further proceedings according to law, consistent with this opinion.

By: Hoffman, J.

Delaney, J.  concur and

Gwin, P.J. dissents

*Gwin, P.J., dissents*

{¶27} I respectfully dissent from the majority's finding that Lieutenant Troyer and Deputy Byland lacked a reasonable suspicion of criminal activity to justify the investigative detention of Mast after he finished filling out his complaint. [*See, supra* ¶ 24].

{¶28} Cameras in the Sherriff's Office recorded the entire encounter. The video was admitted during the suppression hearing and reviewed by the trial court.

{¶29} As the United States Supreme Court has repeatedly held, mere police questioning does not constitute a seizure. *Muehler v. Mena*, 544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005); *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage." *Muehler* at 101 *citing Bostick* at 434–435. As long as the questioning does not prolong a detention, there is no additional seizure within the meaning of the Fourth Amendment. Id. For example, officers do not need reasonable suspicion to ask a detained individual for her name, date and place of birth, or immigration status. *United States v. Alexander*, 467 Fed.Appx. 355, 362 (6th Cir.2012); *United States v. Fernandez*, 600 F.3d 56 (1st Cir.2010); United *States v. Soriano–Jarquin,* 492 F.3d 495 (4th Cir.2007). *See State v. Chagaris,* 107 Ohio App.3d 551, 669 N.E.2d 92 (9th Dist.1995); *State v. Emmons,* 1st Dist. Hamilton No. C-150636, 2016-Ohio-5384, ¶15.

{¶30} Because this was a consensual encounter, no violation of Mast's constitutional rights occurred when the officers asked Mast for his driver license. Further, the officer could lawfully ask Mast if he had driven to the sheriff's office.

{¶31} The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop and briefly detain an individual if the officer

possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968); *see, also, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 15 L.Ed.2d 740(2002); *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct 573, 145 L.Ed.2d 570(2000); *State v. Andrews*, 57 Ohio St.3d 86, 565 N.E.2d 1271(1991).  To justify an investigative stop, the officer must be able to articulate specific facts that would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime.  *See, Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶32}  A valid investigative stop must be based upon more than a mere "hunch" that criminal activity is afoot*.  See, e.g., Arvizu,* 534 U.S. at 274, 122 S.Ct. 744, 151 L.Ed.2d 740; *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673, 145 L.Ed.2d 570; *Terry*, 392 U.S. at 27, 88 S.Ct. 1868, 20 L.Ed.2d 889.  Reviewing courts should not, however, "demand scientific certainty" from law enforcement officers.  *Wardlow*, 528 U.S. at 125, 120 S.Ct. 673, 145 L.Ed.2d 570.  Rather, a reasonable suspicion determination "must be based on commonsense judgments and inferences about human behavior."  Id.  Thus, "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard."  *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744, 151 L.Ed.2d 740; *Wardlow*, 528 U.S. at 123, 120 S.Ct. 673, 145 L.Ed.2d 570.

{¶33}  Once an officer lawfully stops an individual, the officer must carefully tailor the scope of the stop "to its underlying justification*." Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983); *see, also, State v. Gonyou*, 108 Ohio App.3d 369, 372, 670 N.E.2d 1040, 1041(6th Dist. 1995).  Additionally, the length of the stop must

"last no longer than is necessary to effectuate the purpose of the stop." *Royer*, 460 U.S. at 500, 103 S.Ct. 1319, 75 L.Ed.2d 229.

{¶34}   In deciding whether a reasonable suspicion exists, courts must examine the "'totality of the circumstances' of each case to determine whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (*quoting United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621(1981)).   The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu, Arvizu,* 534 U.S. at 273, 122 S.Ct. 744, 151 L.Ed.2d 740; (*quoting Cortez*, 449 U.S. at 418, 101 S.Ct. 690, 66 L.Ed.2d 621). Thus, when a court reviews an officer's reasonable suspicion determination, a court must give "due weight" to factual inferences drawn by resident judges and local law enforcement officers.  Id.

{¶35}   An officer may expand the scope of the stop and may continue to detain the individual without conflicting with *Royer* if the officer discovers further facts, which give rise to a reasonable suspicion that additional criminal activity is afoot.  *See, e.g., Terry*, *supra; State v. Robinette*, 80 Ohio St.3d 234, 240, 685 N.E.2d 762(1997).  As the court stated in *Robinette*, paragraph one of the syllabus:

When a police officer's objective justification to continue detention of a

person * * * is not related to the purpose of the original stop, and when that

continued detention is not based on any articulable facts giving rise to a

suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.

Thus, if a law enforcement officer, during a valid investigative stop, ascertains "reasonably articulable facts giving rise to a suspicion of criminal activity, the officer may then further detain and implement a more in-depth investigation of the individual." Id., 80 Ohio St.3d at 241, 685 N.E.2d at 768.

{¶36} The record reveals that Lieutenant Troyer testified that he could smell a strong odor of alcohol when Mast first approached the reception window to inquire about filing a complaint against his former landlord. He further observed slurred speech and bloodshot, glassy eyes before the officers asked for Mast's driver license. S.T. at 9; 11-12[4]. The lieutenant informed Deputy Byland of his concerns. S.T. 12-13. Deputy Byland testified that Mast had bloodshot, glassy eyes stuttered or slurred speech and he fumbled to get his driver's license from his wallet. S.T. at 18. A strong odor of alcohol, bloodshot, glassy eyes, a lack of balance and slurred speech are indicia of intoxication. "It is generally accepted that virtually any lay witness, including a police officer, may testify as to whether an individual appears intoxicated. *Columbus v. Mullins* (1954), 162 Ohio St. 419, 421, 55 O.O. 240, 123 N.E.2d 422. *See, also, State v. McKee* (2001), 91 Ohio St.3d 292, 296, 744 N.E.2d 737." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 12,(2004); *Accord, State v. Hackerdorn,* 5th Dist. Ashland No. 2004-CA-053, 2005-Ohio-1475, ¶ 67.

---

[4] For clarity, the transcript of the suppression hearing held July 19, 2018 will be referred to as "S.T."

{¶37} The officers therefore, had articulable, specific facts that Mast was under the influence.  The majority posits that it is not against the law to be intoxicated at a police station.  However, it **is** against the law to operate a motor vehicle while under the influence of alcohol.  Therefore, the question now becomes did the officers have articulable, specific, facts under the totality of the circumstances to suspect that Mast had or was going to commit the crime of driving under the influence of alcohol.

{¶38} Mast arrived at the sheriff's office in the morning.  Neither officer observed anyone accompanying Mast into the reception area.  The officers observed the indicia of intoxication before either officer requested Mast's driver license.  Accordingly, the officers had an intoxicated individual who arrived at the sheriff's office to file a complaint.  At this point, the encounter was consensual.  Therefore, as previously noted, the officers could ask him how he had gotten to the sheriff's office, even if they had no suspicion of any wrongdoing, without offending Mast's constitutional rights.

{¶39} Mast could have walked to the station, or he could have taken a taxi or a ride sharing service.  Mast could have been brought to the station by a relative, a friend or a neighbor.  However, when Mast was asked if he had driven to the office, Mast responded, "No, I got an airplane that's waiting for me."  Because the encounter was recorded, we are able to hear Mast's inflection and to see Mast's body language.  I believe that under the totality of the circumstances the officers could reasonably interpret the statement and the manner in which it was delivered as warranting further investigation.  Nervous, evasive behavior is another pertinent factor in determining reasonable suspicion, e.g., *United States v. Brignoni–Ponce*, 422 U.S. 873, 885, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975).   The reasonable suspicion determination must be based on

commonsense judgments and inferences about human behavior.  *See, United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621(1981).

{¶40}  I believe that the officers had a reasonable articulable suspicion that Mast had driven to the Sheriff's Office in his present state and could possible injure himself or members of the public if he were permitted to drive home.  I do not believe that the officers are required to follow Mast around the Sheriff's office, follow him outside, and allow him to get into his car and actually begin to drive away in an attempt to catch him in the act before they can investigate further. The officers should not be required to assume the risk that Mast could wait in the sheriff office until the officers became occupied, slip out unnoticed, and drive away unhindered.  In this case, the indicia of intoxication, his demeanor,  and Mast's answer's to the officers' inquires  provided a reasonable, articulable suspicion to justify the officer in briefly detaining Mast in order to determine whether Mast had driven and would drive in his present state.

{¶41}  In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889(1968), the police officers who effected the investigative stop did not actually observe the suspect commit a criminal act, but concluded, based upon their observations and their training and experience as police officers, that the person they detained may have been "casing" a store, in preparation for committing a burglary. The court in *Terry* noted, "It would have been poor police work indeed for an officer of 30 years' experience in the detection of thievery from stores in this same neighborhood to have failed to investigate this behavior further."  *Terry*, 392 U.S. at 23, 88 S.Ct. 1868, 20 L.Ed.2d 889.

{¶42}  Therefore, in the case at bar, it was not actually necessary for the officers to see Mast drive to the Sherriff's Office.  It would be equally poor police work in this case

for the officers not to investigate whether the person in their presence whom each believed to be under the influence of alcohol had driven a motor vehicle to the Sherriff's Office. Had the officers not continued the investigation concerning how Mast had arrived at the station and how he would return home if he were to leave, I believe, would have been reckless, irresponsible, and a breach of the public trust.

{¶43} The United States Supreme Court has recognized that states possess a compelling interest in promptly removing drunken drivers from the road in order to protect public safety. *Mackey v. Montrym,* 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–2621, 61 L.Ed.2d 321, 334 (1979). *See, also, State v. Hochhausler,* 76 Ohio St.3d 455, 462 1996-Ohio-374, 668 N.E.2d 457 ("In view of the death and injury caused by persons driving on public roads and highways while intoxicated, the General Assembly, by a perpetual process of amending Ohio's "drunk driving" laws, and the courts, by their sentencing practices, have unequivocally stated the state's interest in removing intoxicated drivers from public roadways."); *State v. Uskert,* 85 Ohio St.3d 593, 600, 1999-Ohio-289, 709 N.E.2d 1200 ("Thus, the state has a compelling interest to promptly remove careless drivers from the road as a public safety measure. *Mackey v. Montrym* (1979), 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–2621, 61 L.Ed.2d 321, 334. '[T]he right to operate motor vehicles on public roadways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare.' *Gustafson*, 76 Ohio St.3d at 446, 668 N.E.2d at 450 (Douglas, J., concurring). This unlawful conduct continues to be prevalent, as evidenced by the number of OVI cases that continue to flood the judicial system. Id., 76 Ohio St.3d at 447, 668 N.E.2d at 451 (Douglas, J., concurring).").

{¶44} In *State v. Robinette,* the Ohio Supreme Court observed, in sum, *Royer*[5] and *Brown*[6] set out a standard whereby police officers, under certain circumstances, may briefly detain an individual without reasonably articulable facts giving rise to suspicion of criminal activity, if the detention promotes a legitimate public concern, e.g., removing drunk drivers from public roadways or reducing drug trade.

{¶45} In the case at bar, we find that, pursuant to *Royer* and *Brown*, Officer Newsome was justified in briefly detaining Robinette in order to ask him whether he was carrying any illegal drugs or weapons pursuant to the drug interdiction policy, because such a policy promotes the public interest in quelling the drug trade. 80 Ohio St.3d 234, 241, 1997-Ohio-343, 685 N.E.2d 762. Thus, I find that Mast's constitutional rights were not violated by his detention while the officers investigated whether he had, and would, place himself and the public in danger by driving a motor vehicle while under the influence of alcohol or drugs because the detention was based upon specific, reasonable, and articulable facts. At this point, the officers simply asked Mast was how Mast how he had gotten to the sheriff office; they did not arrest him for an OVI offense at that point.

{¶46} Generally, an officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence. R.C. 2935.03; *Columbus v. Lenear*, 16 Ohio App.3d 466, 468, 476 N.E.2d 1085 (10th Dist. 1984). However, the Ohio Supreme Court has recognized that a police officer may make a warrantless arrest where the arresting officer has probable cause to believe that an individual was operating a vehicle while under the influence of alcohol, even though the officer has not viewed the commission of the offense. *Oregon v. Szakovits*, 32 Ohio St.2d 271, 274, 291 N.E.2d

---

[5] *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229(1983).
[6] *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2673, 61 L.Ed.2d 357(1979)

742(1972); State *v. Henderson*, 51 Ohio St.3d 54, 56, 554 N.E.2d 104 (1990). In *State v. Clark,* 5th Dist. Holmes County No. 00-CA-010, 2001 WL 1775394 (May 11, 2001), this court noted, in so holding, the Ohio Supreme Court, in the *Szakovits* case, adopted language from Mentor *v. Giordano* (1967), 9 Ohio St.2d 140, and set forth certain criteria to consider in determining whether an arrest for DUI may be made even though the officer did not view the commission of the offense. First, the trial court should consider chronology. "A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle * * *." *Szakovits* at 273, *citing Mentor* at 146. Second, each DUI case must be decided on its own particular and peculiar facts. Id. Third, "[a]lthough a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle in that condition." *Szakovits* at 273, *citing Mentor* at paragraph three of the syllabus.

{¶47} Based upon the above three factors, the officer must have probable cause to make the arrest. "Probable cause" exists when * * * facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed. '* * * common rumor or report, suspicion, or even strong reason to suspect * * * [is] not adequate * * *' State *v. Sampson*, 4 Ohio App.3d 287, 488 N.E.2d 467 (7th Dist. 1982) *citing Henry v. United States*, 361 U.S. 98, 101, 80 S.Ct. 168, 4 L.Ed.2d 134(1959). "What is required for a valid warrantless arrest is not that the officer have absolute knowledge that a misdemeanor is being committed in the sense of possessing evidence sufficient to support a conviction after trial, but, rather, that he be in a position to form a reasonable

belief that a misdemeanor is being committed, based upon evidence perceived through his own senses." *State v. Reymann*, 55 Ohio App.3d 222, 224, 563 N.E.2d 749(9th Dist. 1989), *citing Columbus v. Lennear*, 16 Ohio App.3d 466, 468, 476 N.E.2d 1085(10th Dist. 1984). This exception is applied, for the most part, to arrests for driving under the influence. *Reymann, supra*.

{¶48} In applying the criteria set forth in *Szakovits* and the standard set forth in *Reymann* for warrantless arrests in OVI cases, I would find that, under the totality of circumstances in the case at bar, Deputy Byland and Lieutenant Troyer had probable cause to make a warrantless arrest of Mast for driving under the influence even though he did not view Mast driving while intoxicated. Deputy Byland, who cannot smell, relied upon Lieutenant Troyer's report that Mast had a strong odor of alcohol about him. Deputy Byland observed Mast's bloodshot, glassy eyes, and his slurred speech. Deputy Byland further observed Mast's unsteadiness on his feet and fumbling through his wallet. Mast reply, "No, I got an airplane that's waiting for me" when asked if he had driven to the sheriff's office could be relied upon by the deputy to be at the very least, a snarky and, somewhat tacit admission that he had driven his motor vehicle while in his present state. Mast refused to perform the Field Sobriety Tests. During this time, Mast admitted that he had driven to the sheriff's office that morning from his home in Dresden, that his truck was parked in the parking lot, and the keys to the truck were in his pocket. It was at this point that the officers placed Mast under arrest.

{¶49} Based on these factors, I conclude that Deputy Byland's observations and interaction with Mast, as well as the concerns expressed to him by Lieutenant Troyer,

gave him probable cause to believe that Mast operated a motor vehicle while under the influence of alcohol and that the warrantless arrest was valid.

{¶50}  I would affirm the decision of the trial court that overruled Mast's motion to suppress.