DECISION AND JOURNAL ENTRY
Wilma Jean Mattingly was convicted in the Wayne County Municipal Court for the misdemeanor violations of R.C.4507.02(A)(1), operating a vehicle without a license, and of R.C.2921.31, obstructing official business. Mattingly was fined a total of three hundred dollars and court costs for both violations. She appeals from her conviction of operating a vehicle without a license.
 I
On March 7, 1998, while on routine patrol in a marked car, Officer Terry Johns saw Mattingly driving a truck along the street. He noticed that Mattingly's truck seemed to have a defective exhaust system. Officer Johns followed Mattingly for two or three blocks until Mattingly drove the truck through an alley off Congress Street in the Village of West Salem in Wayne County, Ohio. Officer Johns signaled to Mattingly to pull over, using his lights and sirens. She did not, but rather kept driving for several hundred yards before turning into a residence.
Officer Johns approached Mattingly's truck to request her driver's license, registration and insurance information. Mattingly honked the truck's horn so that her husband would come out of the house. Mattingly told Officer Johns he that had no jurisdiction over her, that she was not required to have an Ohio driver's license, and to get off her property.
Mattingly did not produce a valid driver's license from Ohio, or from any other state in the United States. Mattingly did provide Officer Johns what purported to be an "Internationale Driving Permit" ("IDP"). The IDP was issued by the "International Travel Association" and claims the benefit of the Convention on International Road Traffic of 19 September, 1949. After Officer Johns stated the permit was not valid, confusion erupted around the house. Mattingly continued to insist that she did not need a driver's license and to order Officer Johns off her property. She persistently honked her horn to rouse the residents of the house. At some point, a male came out and started advising Officer Johns of what he should be doing. Officer Johns feared for his safety and requested assistance from fellow officers to control the situation. Ultimately, it took four or five officers to arrest Mattingly and transport her to the station.
On April 24, 1998, a hearing was held in Wayne County Municipal Court on the charges of operating a vehicle without a license and obstructing official business. The judge found Mattingly guilty on both charges and imposed a three hundred dollar fine.
 II.
On appeal Mattingly does not set forth assignments of error, as she is required to do by App.R. 16(A). She does set out a "Prayer and Demand for Relief." In it she demands
 [(1)] that all charges be dropped completely and immediately in all of the cases that have transpired to date, dealing with the right to travel upon the highways[; (2)] all documentation including all photos, finger prints, and personal, private property returned[; (3)] to be left alone, to travel upon the roads and highways without being molested as long as I wish and until I trespass [sic] upon the constitutional rights of others who are as I am[; and (4) to be] reimbursed all expenses that she has had to incur in defending these frivolous cases.
This appeal arises out of Mattingly's conviction for driving without a license and for obstructing official business. To the extent that her first demand is an assertion that her conviction for driving without a license is erroneous, it will be reviewed in the interests of justice. See Metal Powder Products, Inc. v. OhioBur. of Emp. Serv. (1990) 69 Ohio App.3d 785, 786. Because the trial court did not render judgment on the subject matter of her second and third demands, this court does not have jurisdiction to entertain them. This court has the power to address Mattingly's demand for reimbursement only to the extent that appellate costs, as defined in App.R. 24, will be assessed to the losing party. This is done as a matter of course at the conclusion of an appeal, and will not be separately addressed herein.
 III
Mattingly does not clearly articulate what it is that she believes to be wrong with her conviction below. From her brief it appears that her contention is that her conviction for a violation of R.C. 4507.02 (A)(1) was improper both because she holds an International Driving Permit and because the state does not have a right to require an individual to be licensed in order to drive. According to Mattingly, "The Right to travel is implied by the 1st Amendment of the Constitution of the United States, e.g. — no State can convert a Right into a Privilege. I do not need a license to travel upon this land according to my belief[.]" In addition, Mattingly claims the Wayne County Municipal Court did not have jurisdiction over her person or the subject matter of the case.
Constitutionality
 Mattingly claims that a license to drive, which complies with the laws of the State of Ohio, is not a prerequisite to driving in the state. Mattingly argues that driving is a right that the state may not infringe upon or take away.
 Therefore, Mattingly has an absolute right to drive, with or without license.
Operating a motor vehicle is not constitutionally guaranteed right. State v. Gustafson (1996), 76 Ohio St.3d 425, 446
(Douglas, J. concurring); Maumee v. Gabriel (1988), 35 Ohio St.3d 60,62-63. Rather driving is a privilege, which may be regulated by the state. Doyle v. Ohio Bur. of Motor Vehicles (1990),51 Ohio St.3d 46, 51 and fn. 6. Under the circumstances relevant to this case, Ohio has chosen to require that anyone operating a motor vehicle within the state have a valid driver's license. R.C. 4507.02(A)(1). This restriction on the privilege of driving is reasonable, and is not unconstitutional.
Jurisdiction
 Mattingly also argues that the trial court did not have jurisdiction over either the subject matter or her person.
The offenses, which were misdemeanors, were committed within
 Wayne County. Pursuant to R.C. 1901.01, and 1901.02(A)(1), the Wayne County Municipal Court has jurisdiction of the violation of any misdemeanor committed within Wayne county.
 The Wayne County Municipal Court had jurisdiction over the subject matter of this case.
Furthermore, because the offense was committed within the state of Ohio, Mattingly was subject to prosecution within Ohio. R.C. 2901.11(A)(1). Summons both for failure to have a valid driver's license and for obstruction of justice are included in the Docket and Journal Entries from the trial court, and were served on Mattingly. Apparently, Mattingly believes that by writing her name in capital letters the State failed to perfect jurisdiction over her person. Personal jurisdiction is established by service of a summons that "appears reasonably calculated to ensure the defendant's appearance." See Crim.R. 4(A)(1). The delivery of a summons to an individual, which bears an identifiable version of the individual's name, even if it is not written in a manner that is entirely to the liking of that individual, is reasonably calculated to ensure her appearance. When Mattingly was given the traffic ticket containing the summons, and when she was served with the separate summons for obstructing justice by the Wayne County Municipal Court, personal jurisdiction was properly established pursuant to Crim.R. 4(A) and Crim.R. 4.1(C).
 C. International Driver's Permit
Mattingly claims that the complaint and conviction against her for violating R.C. 4507.02(A)(1) were in error. R.C.4507.02(A)(1) provides: "No person * * * shall operate any motor vehicle upon a highway or any public or private property used by the public for purposes of vehicular travel or parking in this state unless the person has a valid driver's license [.]" R.C.4507.04 provides an exemption for nonresidents "permitted to drive upon the highways of their own states" who may drive "upon condition that such nonresidents may be required at any time or place to prove * * * their right to operate * * * such motor vehicle[.]" The definition of state includes the provinces of Canada. R.C. 4507.01(A); R.C. 4501.01(Z).
Mattingly admitted to Officer Johns that "she did not [have an Ohio Driver's license] and was not required to have one." Officer Johns testified to that admission. If she is a resident of Ohio, her conviction was proper.
Despite her lack of an Ohio driver's license, Mattingly may avoid conviction by establishing that she is a nonresident and that she is permitted to drive in her state of residence. Officer Johns testified that Mattingly showed him her IDP. Even though Mattingly declined to put on a defense, the court questioned her about the IDP. Mattingly indicated that the IDP was issued by "Robinson of Canada. * * * I was in Canada when I got that. * * * That's where I sent for it at." Mattingly did not assert that Canada, or any of its provinces, was her residence, nor did she assert that the IDP was issued by the Canadian government, any subdivision thereof, or a duly authorized association. See Convention on International Road Traffic, Sept. 19, 1949, ch. V, art. 24(3).
The Convention on International Road Traffic is a multinational agreement, to which the United States is a contracting state. Convention on International Road Traffic, Sept. 19, 1949, fn. 1. Contracting states agree to permit "any driver admitted to its territory who fulfills the conditions which are set out in annex 8 and who holds a driving permit issued to him * * * to drive on its roads without further examination [the type of motor vehicle] for which the permit has been issued." Id.
at ch. V, art. 24(1). The contracting state may, however, require any party relying on the authority of the convention, to "carry an international driving permit conforming to the [specifications] in annex 10[.]" Id. at ch. V, art. 24(2).
It is clear that the international driving permit referred to does not replace a valid operator's license from one's residence. The general rule is that a valid driver's license in any contracting state will be honored by any other contracting state. This is not always practical, however. Some countries do not require physical permits to drive. In addition, the wide variety among licenses makes the task of distinguishing between a valid foreign license and an invalid one nearly impossible. Unlike national driver's licenses, the IDP is universally identifiable because each country issues it in conformance with the specifications contained in the multi-national contract. Convention on International Road Traffic, Sept. 19, 1949, annex 10. This uniform document provides a means of verifying that the driver bearing the document is, in fact, permitted to drive in her country of residence.
The trial court determined that Mattingly's IDP was not valid. After reviewing it, and comparing it to the specifications in annex 10, we agree. See Convention on International Road Traffic, Sept. 19, 1949, annex 10. Assuming Mattingly's residence is one of the Canadian provinces, she did not provide acceptable evidence in the form of a Canadian driver's license, or an IDP authorized by the Canadian government, that she was "permitted to drive upon the highways of [her] own state[.]" R.C. 4507.04. If her residence is anywhere outside of Ohio, other than a Canadian province, Mattingly has provided no evidence at all that she possessed a valid driver's license. Because she has not established that she falls within the exception to the requirement that she produce a valid driver's license her conviction was correct.
 III
It is not unconstitutional for Ohio to reasonably regulate the privilege of driving within Ohio. The writing of her name in capital letters, as opposed to with initial capitals only, did not prevent the Wayne County Municipal Court from establishing personal jurisdiction over her. Because Mattingly drove without having a valid Ohio driver's license if she was an Ohio resident, or a valid license from her resident state if she was not an Ohio resident, she was properly convicted of driving without a license. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 WILLIAM R. BAIRD FOR THE COURT WHITMORE, J.
BATCHELDER, J. CONCUR