[Cite as *Parma v. Long*, 2020-Ohio-4833.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF PARMA, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 109201 |
| v. | : | |
| JAMES LONG, JR., | : | |
| Defendant-Appellant. | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 8, 2020

Criminal Appeal from the Parma Municipal Court
Case Nos. 19CRB01742 and 19TRD05694

### *Appearances:*

Timothy G. Dobeck, Parma Law Director and Chief Prosecutor, and John L. Reulbach, Jr., Assistant Parma Prosecutor, *for appellee*.

James Long, Jr., *pro se*.

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant James Long, Jr., was found to be driving with a suspended license when a Parma police officer checked his vehicle's license plate. When the officer stopped his vehicle to investigate the suspended license, Long

refused to cooperate, claiming the officer lacked probable cause to stop him. Long was subsequently charged with misdemeanor offenses of driving under suspension, obstructing official business, and resisting arrest. After a bench trial, he was found guilty of driving under suspension and obstructing official business, but not guilty of resisting arrest. On appeal, Long, pro se, raises the following four assignments of error for our review:

1. The Appellant should not have been charged with driving under suspension, or any other charges when the Appellant had insurance during October of 2018 and continuously through the time he was stopped by police on Brookpark Road on April 14, 2019. Why would not the appellant have been confused and upset when he was pulled over by the police for no apparent reason and for a BMV determination of which he was totally unaware.

2. The State of Ohio has no right to take a Constitutionally protected right and convert it into a privilege, license it and charge a fee.

3. Patrolman Evan J. Mackensen unlawfully searched the Appellant's plates without a probable cause and without a "search warrant signed by a judge or magistrate["] which resulted in racial profiling — a Fourth and Fifth Amendment violation.

4. The Appellant was denied a jury trial; the prosecutor did not have a sworn affidavit from an injured party. The court failed to bring the Appellant to trial within 180 days for allegedly driving under suspension, for obstructing official business, and resisting arrest when the Appellant showed his insurance papers.

{¶ 2} After a careful review of the record and applicable law, we find no merit to the multitude of claims raised by Long and affirm the judgment of the Parma Municipal Court.

**Trial Testimony**

{¶ 3} Long, a 73-year-old African-American male, acted as his own counsel at the bench trial. The state presented the testimony of Officer Mackensen of the Parma Police Department to support the charges against Long. In the afternoon of April 14, 2019, Mackensen was on a three-hour traffic detail in the area of Ridge Road and Brookpark Road, performing checks on the license plates of vehicles using the computer in his police vehicle.

{¶ 4} Officer Mackensen testified that he was randomly checking license plates and Long's vehicle caught his attention when he ran the vehicle's license and the computer revealed the registered owner was under a "non-compliance" suspension, which meant a suspension involving financial responsibility. The officer testified that before initiating a traffic stop of Long's vehicle, he verified that the right plate number had been entered and the vehicle matched the listing on the computer screen.

{¶ 5} Officer Mackensen testified that he approached Long's vehicle and asked for his driver's license and proof of insurance. Long refused to provide these documents. Officer Mackensen informed Long that because he was driving under suspension, his vehicle would be towed pursuant to Parma Police Department policies. Because Long refused to cooperate, Officer Mackensen called for backup. Patrolman Chihil arrived, and both officers attempted to talk to Long, but Long still refused to roll down the window, unlock the vehicle door, or exit the vehicle. The officers advised him that he was obstructing their official duty and they would try to

gain entry into his vehicle. The officers then employed a lockout device to unlock Long's front passenger door. Long tried to block the effort by repeatedly grabbing the end of the unlocking tool.

{¶ 6} Officer Mackensen testified that once the door was unlocked, Long "was taken from the car," even though his dashcam video, which was played at the trial, showed that Long exited the vehicle voluntarily once the officer unlocked the car and opened the door on the driver's side. Furthermore, while Officer Mackensen testified that Long resisted arrest once he exited the vehicle, the dashcam video does not clearly reflect Long resisting.

{¶ 7} On cross-examination, Long, acting as his own counsel, asked Officer Mackensen if he engaged in racial profiling and targeted him because of his race. The officer maintained he was randomly running the plates and denied he was biased. The officer was asked on direct examination how many license plates he had checked prior to running Long's plate. He initially answered "anywhere between 50 and 100," but when asked again on cross-examination, he stated "between zero and 50." When asked if there were other plates he found to be suspended before checking Long's plate, he stated that he did not recall any. Officer Mackensen testified that the basis of the charge of obstructing official business was Long's refusal to exit the vehicle. While Long claimed his right arm was tased, Officer Mackensen denied a taser was deployed in this case. The dashcam video does not reflect the use of a taser in the incident.

{¶ 8} In addition to the dashcam video, the city submitted an exhibit, a BMV abstract of Long's driving record dated April 25, 2019, to show that Long was under suspension. Despite claiming that he had insurance on the day of the incident, Long presented no witnesses or documentary evidence at trial.

{¶ 9} While presenting no evidence, Long asserted he could not be charged with driving under suspension because driving on the public roads is a right and not merely a privilege, the constitutional requirement of probable cause was not met in this case, the police officer engaged in racial profiling in stopping his vehicle, and he should not be charged with any crimes because there was no "injured party."

{¶ 10} After trial, the court found Long not guilty of resisting arrest but guilty of obstructing official business and driving under suspension. The court imposed a fine of $75 plus court cost for the offense of driving under suspension. It imposed a one-day jail term on the obstructing-official-business count with a one-day credit for time served, as well as a fine of $250 plus court costs.

{¶ 11} On appeal, Long raises four assignments of error for our review. We address the four assignments out of order for ease of discussion. We note that both the assignments of error and the claims raised under the assignments of error are somewhat incoherent and confusing. We will nonetheless address each claim in turn to the best of our ability to understand them.

**The State Can Regulate Driving**

{¶ 12} Under the second assignment of error, Long claims that the state cannot license people to drive because driving is a constitutional right, not merely a

privilege. Contrary to Long's claim, the courts in Ohio have long recognized that driving a motor vehicle is not a constitutionally guaranteed right but a state-regulated privilege. *State v. Gustafson*, 76 Ohio St.3d 425, 446, 668 N.E.2d 435 (1996) (Douglas, J., concurring), citing *Maumee v. Gabriel*, 35 Ohio St.3d 60, 63, 518 N.E.2d 558 (1988). *See also Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46, 52, 554 N.E.2d 97 (1990); *State v. Tanner*, 15 Ohio St.3d 1, 5, 472 N.E.2d 689 (1984). "The right to operate motor vehicles on public roadways of this state may be regulated by the lawful exercise of the police power for the benefit of public safety and welfare." *Gustafson* at 446. As codified in R.C. 4510.12, it is a criminal offense for a person to "operate any motor vehicle upon a public road or highway * * * unless the person has a valid driver's license * * *." Long's claim is without merit, and the second assignment of error is overruled.

**Lawfulness of the Traffic Stop**

{¶ 13} Under the third assignment of error, Long argues Officer Mackensen unlawfully stopped his vehicle because the officer did not have a warrant to investigate his license plate. Long did not file a motion to suppress, either in writing or orally, and therefore he waived the issue.[1] However, even if he had filed a motion to suppress and therefore preserved the issue, his claim is without merit.

---

[1] We recognize that "pro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities." *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2004-Ohio-5178, ¶ 3. "However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and

{¶ 14} The Fourth Amendment permits a brief investigative stop when a police officer has a particularized and objective basis for suspecting criminal activity. *State v. Hawkins*, 158 Ohio St.3d 94, 2019-Ohio-4210, 140 N.E.3d 577, ¶ 19, citing *Navarette v. California*, 572 U.S. 393, 396, 134 S.Ct. 1683, 188 L.Ed.2d 680 (2014). The investigative-stop exception to the Fourth Amendment warrant requirement permits a police officer to stop and briefly detain a person if the officer has a reasonable suspicion that the person is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). This is referred to as a *Terry* Stop, and it includes the temporary detention of motorists for the purposes of enforcing traffic laws. *State v. Dorsey*, 10th Dist. Franklin No. 04AP-737, 2005-Ohio-2334, ¶ 17, citing *Terry*. An officer does not need probable cause to make a traffic stop; to justify an investigatory stop of a vehicle, the officer must demonstrate specific and articulable facts that justify a reasonable suspicion that the individual to be stopped may be involved in criminal activity, including minor traffic violations. *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091 (1996).

{¶ 15} In this case, it is undisputed the only reason articulated by Officer Mackensen for the traffic stop was that he was running the license plates of the vehicles in traffic and learned the registered owner of Long's vehicle was under suspension.

procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes." *Id.*

{¶ 16} It is well settled that a police officer does not need to possess reasonable suspicion to conduct a random check of a license plate on vehicles traveling on a public roadway. *State v. Greathouse*, 8th Dist. Cuyahoga No. 93187, 2010-Ohio-1209, ¶ 11. This is because "[a police officer's] check of a person's Bureau of Motor Vehicles records does not implicate Fourth Amendment rights, as it does not involve any intrusion or interruption of travel, or any attempt to restrain or detain him." *State v. Freeman*, 11th Dist. Trumbull No. 2001-T-0008, 2002 Ohio App. LEXIS 1205, 6 (Mar. 15, 2002). *See also, e.g., State v. Saltsman*, 7th Dist. Columbiana No. 97CO48, 2000 Ohio App. LEXIS 1096 (Mar. 20, 2000) (holding that running a license plate is not a stop and the reason for running the plate is irrelevant).

{¶ 17} Furthermore, once an officer learns that the registered owner of a vehicle is under suspension, the officer may reasonably infer that the vehicle is being driven by its registered owner. *Greathouse* at ¶ 11. *See also Tallmadge v. McCoy*, 96 Ohio App.3d 604, 645 N.E.2d 802 (9th Dist.1994) ("where an officer knows that the owner of a vehicle has a suspended operator's license and draws the rational inference that the owner of the vehicle is likely to be operating the vehicle, there exists sufficient reasonable suspicion to justify an investigatory stop"); *State v. Maston*, 7th Dist. Mahoning No. 02 CA 101, 2003-Ohio-3075, ¶ 16 ("[m]ultiple courts have held that an officer may run any license plate it chooses and when that plate comes back as being registered to a person who is not permitted to drive, the officer can reasonably infer that the owner is driving the vehicle"). In a recent case

decided by the United States Supreme Court, *Kansas v. Glover*, 589 U.S.____, 140 S.Ct. 1183, 206 L.Ed.2d 412 (2020), the Court upheld this rule, holding that a police officer does not violate "the Fourth Amendment by initiating an investigative traffic stop after running a vehicle's license plate and learning that the registered owner has a revoked driver's license" as long as "the officer lacks information negating an inference that the owner is the driver of the vehicle." *Id.* at 1186.

{¶ 18} Here, while Officer Mackensen had no reasonable suspicion that Long was involved in criminal activity before he checked Long's vehicle's license plate, he was permitted to do so pursuant to the case law authority. And, once he learned the license plate was suspended, he had reasonable suspicion to stop Long's vehicle to investigate his driving under suspension.

{¶ 19} Long appears to claim on appeal that Officer Mackensen ran his license plate *after* the officer stopped his vehicle. While the dashcam video does not reveal whether the officer ran the license plate before or after he stopped Long's vehicle, Officer Mackensen testified that he ran the license plate *prior to* the stop. "Credibility is a matter for the trial judge who is in the best position to judge the demeanor, voice inflection, and gestures of the witnesses as they testify." *Maston*, *supra*, at ¶ 14, citing *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997).

{¶ 20} Officer Mackensen possessed reasonable suspicion to stop Long's vehicle even if Long had filed a motion to suppress and preserved the issue for our review. The third assignment is without merit.

**Other Claims**

{¶ 21} Under the first and fourth assignments, Long raises multiple unrelated claims. We address these claims in turn.

{¶ 22} Long argues he should not have been charged with driving under suspension because he had insurance during the relevant period of time. He alludes on appeal to a prior traffic case where he was found to lack proof of insurance, which led to the noncompliance license suspension; he claims the trial court in the previous case and the BMV made a mistake in suspending his license. The prior case, however, is not part of the record before us. Long attaches an exhibit to his appellant's brief purporting to show he had insurance at the time of the instant incident. However, this document was not presented to the trial court and is therefore not part of the appellate record. In any event, in this case he was cited with driving under suspension; the purported proof of insurance, while relevant to the prior case, is not pertinent in the instant case.[2]

{¶ 23} Long argues his right to a jury trial was violated because he was tried to the bench. Crim.R. 23 provides that a demand for a jury trial "must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later." It also provides that "[f]ailure to demand a jury trial as provided

---

[2] Long alleges in his appellant's brief that "during Appellant's appearances, he provided both the judge and the prosecutor with written documentation of his insurance coverage from before October 18, 2018 through April 14, 2019." The record before us, however, does not reflect these documents.

in this subdivision is a complete waiver of the right thereto." The record does not reflect that Long had filed a demand for a jury trial.

{¶ 24} Long argues he could not be charged with the offenses in this case because the prosecutor failed to present an affidavit from an "injured party." Presumably, Long is arguing that no crime can exist in the absence of an injured party. However, he provides no authority to support this claim.

{¶ 25} Finally, Long claims his speedy trial right was violated. The right to a speedy trial by the state is guaranteed to a criminal defendant by the Sixth and Fourteenth Amendments to the United States Constitution. *Klopfer v. North Carolina*, 386 U.S. 213, 222-223, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In this case, Long was charged with two second-degree misdemeanor offenses — obstructing official business and resisting arrest — as well as an unclassified misdemeanor offense of driving under suspension. For second-degree misdemeanors, R.C. 2945.71(B)(2) required the city to bring Long to trial within 90 days of his arrest. Pursuant to 2945.72(H), the statutory time for a speedy trial may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion."

{¶ 26} Long was arrested and released on April 14, 2019. On April 22, 2019, he was arraigned and the trial court set the first pretrial for May 1, 2019. Although Long claims on appeal he did not request any continuances, our review of the trial court's docket reflects otherwise. A docket entry dated May 1, 2019, states

"Continuance Requested by Defendant" and a fee of $5 for continuance was assessed. On that day, a journal entry stating "THE MOTION FOR CONTINUANCE has been granted and your case has been rescheduled for PRE-TRIAL on 5/22/2019 * * *" was mailed to Long.

{¶ 27} Subsequently, according to the docket, three additional requests for continuance were made by defendant, on May 23, 2019, June 19, 2019, and July 24, 2019. On July 24, 2019, the court set the pretrial for August 28, 2019. The docket reflects this is the last request for continuance made by defendant.

{¶ 28} On August 30, 2019, the trial court set the trial for September 25, 2019. On September 18, 2019, the prosecutor requested a continuance due to the unavailability of witness Officer Mackensen on the scheduled trial date. The court granted the motion and rescheduled the trial for October 30, 2019. The trial took place on that day as scheduled.

{¶ 29} Pursuant to his speedy trial right, Long should be brought to trial on or before July 13, 2019, within 90 days of his arrest on April 14, 2019. However, the docket shows three requests made by defendant between May 1, 2019, and August 28, 2019 (totaling 120 days), and therefore, this period of time (120 days) is attributable to Long. Accordingly, the city had to bring Long to trial no later than 120 days after July 13, 2019. The trial took place on October 30, 2019, well within the 120-day period. Consequently, Long's claim of speedy trial violation is without merit. The first and fourth assignments of error are overruled.

{¶ 30} Judgment affirmed.

Costs to appellant.  Costs waived.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MICHELLE J. SHEEHAN, JUDGE

LARRY A. JONES, SR., P.J., and
EILEEN A. GALLAGHER, J., CONCUR